[Civ. No. 1342. Second Appellate District.—June 10, 1913.]

BLACK EAGLE OIL COMPANY (a Corporation), Appellant, v. S. E. BELCHER et al., Respondents.

QUIETING TITLE—EVIDENCE—OBJECTION TO DEED BECAUSE OF ALTERATION—APPEAL.—Where the plaintiff in an action to quiet title objects to the defendant introducing a deed in evidence, because of an alteration of the description therein, he should, if he desires the ruling of the trial court to be reviewed on appeal, incorporate in the record evidence of the facts upon which his attack upon the integrity of the deed is based; the mere statement of counsel that an alteration has been made, cannot be deemed by the appellate court sufficient to contradict the deed which, as presented to such court, discloses no alteration.

ID.—DESCRIPTION IN DEED—TRANSPOSITION OF LETTERS—RECORD AS NOTICE.—The letters "B. M. & S." in the deed in this case are found to be a transposition of the letters "S. B. & M.," meaning San Bernardino base and meridian, and the record of the deed is sufficient to impart constructive notice.

ID.—DEED ABSOLUTE AS MORTGAGE—BURDEN OF PROOF—APPEAL.—The burden of proving that a deed absolute in form was in fact intended as a mortgage rests upon the party who alleges it; and if there is

a substantial conflict of evidence upon the question, the conclusion of the trial court is conclusive.

ID.—BONA FIDE PURCHASER OF LAND—UNRECORDED DEED—BURDEN OF PROOF.—When it appears, in the course of an action to quiet title, that the defendant bases his claim to the property upon a prior unrecorded deed, the burden is on the plaintiff to show that he paid the purchase money in good faith without notice of such deed.

ID.—PAYMENT OF CONSIDERATION IN GOOD FAITH—RECITALS IN DEED AS EVIDENCE.—Recitals contained in the deed as to the consideration paid cannot be accepted as *prima facie* proof of such payment; they are but declarations of the grantor.

APPEAL from a judgment of the Superior Court of Kern County and from an order refusing a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Kaye & Siemon, R. H. Cross, and Arthur H. Brandt, for Appellant.

Charles N. Sears, and C. L. Claflin, for Respondents.

SHAW, J.—Action to quiet title. Judgment against plaintiff, from which, and an order denying its motion for a new trial, it appeals. The land involved is the south ½ of the northeast ¼ of section 34, township 12 north, range 23 west, S. B. M., in Kern County. It was stipulated that prior to July 27, 1906, the ownership of the entire northeast ¼ of said section 34 was vested in defendant S. E. Belcher. Plaintiff then introduced in evidence the record of a grant deed executed by S. E. Belcher, dated March 9, 1910, recorded April 5, 1910, which purported to convey the land described in the complaint to the Black Eagle Oil Company; whereupon it rested its case. Thereupon defendant offered in evidence a grant deed and the indorsements thereon as follows:

"GRANT DEED.

"S. E. Belcher of Los Angeles, County of Los Angeles, State of California, in consideration of Forty Dollars, to me in hand paid, the receipt whereof is hereby acknowledged, does hereby grant to Ezra Belcher of Long Beach, County of Los Angeles, State of Calif., all that real property situated

in the county of Kern, State of California, described as follows:

"The Northeast quarter (¼) of Section thirty-four (34), Township twelve (12) range twenty-three (23) B. M. and S., in the County of Kern, State of California.

"Witness my hand this 27th day of July, 1906.

"(Signed)    S. E. BELCHER.

"State of California,

"County of Los Angeles—ss.

"On this 27th day of July, 1906, before me J. E. Counts, a notary public in and for said county, personally appeared S. E. Belcher, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he executed the same.

"Witness my hand and official seal.

"(Signed)    J. E. COUNTS,

"Notary Public in and for the county of Los Angeles, State of California.

"(Notarial Seal.)

"(Endorsed)    Recorded at the request of E. Belcher Aug. 8th, 1906, at 55 min. past 11 A. M., in Book 178 of Deeds, page 224, Kern County Records.

"(Signed)    CHAS. A. LEE,

"Recorder."

Plaintiff objected to its introduction upon the ground that it appeared that an alteration had been made in the deed by "changing the quarter from typewritten matter to a description by pen, which has not been explained, and that no township or range, and no base or meridian is given." The objection was overruled. As to the first objection, there is absolutely nothing in the copy of the deed as set forth and printed in the record to indicate or show any alteration changing the typewritten matter by the use of a pen or otherwise, or that any alteration or change whatsoever was made in the deed. Upon attacking the integrity of the deed plaintiff should have presented to the court, and incorporated in the record for review, evidence of the facts upon which such attack was based. The mere statement of counsel that an alteration had been made cannot be deemed by this court sufficient to contradict the deed which, as here presented, discloses no alteration made therein. As to the second objection, we think

it sufficiently appears that the letters "B. M. & S." are clearly a transposition of the letters "S. B. & M." generally used and recognized as meaning "San Bernardino base and meridian," in which, or in Mount Diablo base and meridian, all the lands in Kern County are situated. This deed and the indorsements thereon clearly and unequivocally show it to be a conveyance duly made and acknowledged on July 27, 1906, by S. E. Belcher, to Ezra Belcher, to whom it was duly delivered, and further shows that it was, on August 8, 1906, duly recorded in the records of the recorder's office of Kern County. Under these circumstances, plaintiff when it, on March 9, 1910, received the deed from S. E. Belcher to the south ½ of the northeast ¼ of said section 34, must be deemed to have had constructive notice of the fact that its grantor had no title or interest in the property, for the reason that he had, by a good and sufficient deed, conveyed the entire northeast ¼ of the section to defendant E. Belcher.

Notwithstanding the instrument purports to be a grant, appellant insists that it was intended by the parties to be a mortgage for the purpose of securing the payment of money heretofore borrowed from E. Belcher by S. E. Belcher. The burden of proving that the deed absolute in form was in fact a mortgage, rested upon plaintiff. While much evidence was adduced upon the point, it was insufficient in the mind of the court to establish such fact, and its conclusion in this regard is amply supported not only by the circumstances, but by direct and positive testimony. E. Belcher had from time to time, prior to the making of the deed, made to S. E. Belcher numerous loans, amounting in the aggregate to several hundred dollars. On the date of the execution of the deed he paid S. E. Belcher the forty dollars mentioned therein as the consideration therefor. S. E. Belcher testified: "My father was willing to accept the deed then of the property in consideration of the moneys that he had advanced to me and did receive the deed in consideration. It was considered and agreed that that closed up all amounts owing to my father by me and that made he and I even in our affairs." Upon the same subject, E. Belcher testified that prior to the execution of the deed he had advanced money in various sums at various times to S. E. Belcher and kept an account thereof in a book which he kept for such purpose. "When we wound

it all up, we figured the thing all up, our books and everything and squared up. I haven't kept no account since, but I have let him have money since but I haven't kept any account of it.'' At most, there was a substantial conflict of evidence upon the question, as to which the conclusion of the trial court must be deemed conclusive.

After the reception in evidence of the deed from S. E. Belcher to E. Belcher, oral evidence was adduced tending to show that as originally written the deed described the land as the southeast quarter, instead of the northeast quarter, and as thus written it was recorded; that after it was recorded the description in the deed was changed by striking out the words ''southeast quarter'' and inserting in lieu thereof the words ''northeast quarter,'' and as so changed it was introduced in evidence, but that no acknowledgment or certificate thereof as thus altered was had or made. We are unable to attach any importance to such facts, for the reason that defendant's right to the property is not based upon any deed other than that recorded August 8, 1906, which as shown correctly described the land. Moreover, if such oral evidence be deemed material, we cannot say the court should have accepted it as being sufficient to overthrow the fact established by the deed and the indorsement thereon. If the deed as introduced in evidence was not the one recorded—and that is the real claim of appellant—such fact could have been readily and easily established by offering the record thereof from the recorder's office. This was not done.

Another point is presented upon which we feel that the judgment and order must be affirmed. No question exists but that the deed, even conceding the alteration in the description thereof as claimed by appellant, and admitting that it was not acknowledged nor recorded, was nevertheless sufficient as a conveyance of the property as between the parties. Assuming the right of E. Belcher to be that of the holder of a prior unrecorded deed, plaintiff could not recover upon a subsequent recorded deed unless it was a purchaser in good faith and for a valuable consideration. Nor is this a rule of pleading, as suggested by appellant. (*Kenniff* v. *Caulfield,* 140 Cal. 34, [73 Pac. 803].) When it appeared, if at all, in the course of the trial that defendant Belcher based his claim to the property upon a prior unrecorded deed, the burden was

imposed upon plaintiff to show that, without actual notice of the existence thereof, it had in fact parted with a valuable consideration as the purchase price of the property. "To entitle a party to protection as such purchaser, he must prove the payment of the purchase money in good faith and without notice, actual or constructive, *prior to and down to the time of its payment,* for if he had notice at any moment of time before the payment of the money, he is not a *bona fide* purchaser." (*Boone* v. *Chiles,* 10 Pet. (U. S.) 210, [9 L. Ed. 388] ; *Scott* v. *Umbarger,* 41 Cal. 419; *Eversdon* v. *Mayhew,* 65 Cal. 163, [3 Pac. 641].) Nor can the recitals contained in the deed as to the consideration paid be accepted as *prima facie* proof of such payment. "Such recitals are but the declarations of the grantor." (*Long* v. *Dollarhide,* 24 Cal. 218.) The deed made by S. E. Belcher to plaintiff appears to have been made pursuant to an agreement made February 21, 1910, between S. E. Belcher and one George A. Cooley, which recites that the consideration therefor to be paid to said Belcher "shall be the issuance to him of 80,000 shares of the capital stock of the Black Eagle Oil Company, a corporation now being organized by the second party (George A. Cooley), with a capitalization of $1,000,000, with one million shares." . . . "The second party (George A. Cooley) shall cause said company to purchase and place upon said property machinery and tools for drilling an oil well thereon as soon as practicable, and shall cause said company to employ first party as superintendent at a salary of $200 per month, to commence as soon as said company is ready to purchase said machinery and tools." This agreement imposed no obligation upon either Cooley or the company "now being organized" to employ S. E. Belcher at a salary of two hundred dollars per month for any definite or fixed time. Nor can the promise of Cooley to cause to be purchased and placed upon the property machinery and tools for drilling an oil well be construed as an obligation to drill such well, or to do anything to improve the land. Moreover, Belcher was never employed, nor were any tools and machinery for drilling an oil well placed upon the property. The only consideration, therefore, paid to Belcher for the conveyance of the property was the issuance to him of two-twenty-fifths of the capital stock of the corporation, whose sole and only assets, so far as dis-

closed, consisted of the land so by him conveyed to it. In the absence of anything done by the corporation to improve or enhance the value of the land, the value of the entire capital stock, if all was issued could not exceed the value of the land. In other words, the effect of the transaction is consistent with the theory that Belcher got two-twenty-fifths of his own land for a conveyance of the whole thereof.

The judgment and order are affirmed.

Allen, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 10, 1913.