[Civ. No. 5192.  First Appellate District, Division Two.—July 10, 1925.]

# KATHERINE CHAPMAN, Appellant, v. PETER OSTERGARD, Respondent.

[1] QUIETING TITLE — DEEDS—RECORDATION—PRIORITY—GOOD FAITH—NOTICE—FINDINGS—JUDGMENT—APPEAL.—In an action to quiet title to real property by a purchaser thereof whose deed is subsequent, but recorded prior, to defendant's deed, notwithstanding the findings that plaintiff's deed was made for a valuable consideration and that, at the time of the execution of defendant's deed, plaintiff did not have actual knowledge of the existence of defendant's deed, are binding on appeal because there is some evidence to support said findings, nevertheless the judgment in defendant's favor must be upheld where the plaintiff failed to sustain the burden of proof that the conveyance to her was taken in good faith and without constructive knowledge, at least, of the interests of defendant; and although the trial court did not find upon either of these issues—good faith and constructive knowledge,—the action being one in equity, and the burden of proof being upon the plaintiff to prove the equities in her favor, it must be assumed in support of the judgment that the trial court would have found against plaintiff if a finding had been made; and plaintiff is not, therefore, injured by the failure to find thereon.

[2] ID.—SUBSEQUENT PURCHASER — GOOD FAITH — NOTICE—BURDEN OF PROOF.—In an action to quiet title to real property by a purchaser thereof whose deed is subsequent, but recorded prior, to defendant's deed, the burden of proof is on the plaintiff to show that she had made the purchase in good faith and without notice, actual or constructive.

[3] ID.—SECTION 1214, CIVIL CODE—INTENT.—The purpose of section 1214 of the Civil Code is to protect the innocent and *bona fide* purchaser from one who may procure a deed with an earlier date for the purpose of defrauding the other; and it was never intended that the section should be applied to defraud one who has in good faith and for a valuable consideration purchased property and who has delayed placing his conveyance of record.

[4] ID. — TRUSTS — EVIDENCE. — In such action, plaintiff's contention made on appeal for the first time that the facts show the existence

---

1.  See 2 Cal. Jur. 1034; 2 R. C. L. 243.
2.  See 25 Cal. Jur. 844; 27 R. C. L. 686.
3.  See 22 Cal. Jur. 588.

of an express trust concerning the property in question wherein her grantor was the trustee and she was the beneficiary, cannot be sustained.

---

(1) 4 **C. J.**, p. 898, n. 92; 39 **Cyc.**, p. 1768, n. 14, p. 1769, n. 15, p. 1785, n. 11. (2) 39 **Cyc.**, p. 1781, n. 97. (3) 39 **Cyc.**, p. 1707, n. 40, p. 1740, n. 69, p. 1770, n. 21, p. 1785, n. 11. (4) 4 **C. J.**, p. 778, n. 75, p. 1060, n. 12; 32 **Cyc.**, p. 1305, n. 1, p. 1369, n. 1; 39 **Cyc.**, p. 86, n. 78.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred J. Hennessy, M. J. Mazuran and Geo. D. Collins, Jr., for Appellant.

Pierce & Carlson, J. E. Rodgers and A. F. Bray for Respondent.

NOURSE, J.—The plaintiff commenced this action to quiet title to certain property situated in El Cerrito Park, Contra Costa County. The complaint is in the usual form. The answer denies the material allegations of the complaint and sets up two separate defenses—ownership of the property by the defendant and plaintiff's acceptance of the deed under which she claims with full knowledge of the fact that the property had theretofore been conveyed to the defendant and that he was the owner thereof and that the plaintiff did not purchase the lands in good faith or for a valuable consideration. The cause was tried before the court without a jury and judgment was entered in favor of the defendant. Plaintiff has appealed from the judgment on a record prepared under the provisions of section 953a, Code of Civil Procedure.

The facts of the case are that on the sixteenth day of March, 1922, the defendant entered into possession of the premises under a written lease executed by the then owner, Edwin Chew, and dated the first day of April, 1922, by which the premises were leased to the defendant for a period of one year from the first day of March, 1922, at the yearly rental of $540. One of the covenants of the lease was that

if the defendant at any time during the term of the lease or within thirty days after the expiration thereof "shall be minded to purchase the leased premises the above amount paid as rent shall apply on the purchase price." On March 8, 1922, the said Chew executed and delivered to the defendant his receipt for the sum of $475 on account of the rental of the premises. After the defendant's occupancy began he paid the further sum of $25, making the full sum of $500 paid on account of rental and which was afterward applied to the purchase price in the manner hereinafter stated. He immediately made numerous improvements on the premises which he occupied as his home, and frequently stated to the plaintiff that he intended to live on the place and that he intended to purchase it from Chew. The place had been previously occupied as the home of the plaintiff and said Chew, the plaintiff having recently been divorced from her husband, who was at that time confined in the county jail following a conviction for some misdemeanor. When the plaintiff and Chew removed from the premises for the purpose of giving possession to the defendant plaintiff left in the house some of her household possessions. After her former husband had been released from confinement he returned to the premises and removed some of these household goods and placed them in storage. The plaintiff, however, claimed that some of her possessions had been left in the house and called frequently at the place while defendant was in possession for the purpose of securing what she claimed had been left behind. At these times she had conversations with the defendant in which he gave her to understand that he intended to exercise the option contained in the lease and to purchase the property for his own home. On April 21, 1922, a letter was mailed from the office of one of plaintiff's attorneys in the city of San Francisco to the defendant, and on behalf of the plaintiff, in which the defendant was notified that the plaintiff claimed some interest in the property and that any conveyance thereof or any payment thereon from Chew without the signature of the plaintiff, or that of one of her attorneys, would be treated as fraudulent by the plaintiff. In the same letter the defendant was given further notice "that any *agreement* to sell said property made and executed by and between Mr. Chew and yourself . . . will also be treated as being made for the express purpose to defraud Mrs. Chap-

man of her interest in said property." This letter was delivered to the wife of the defendant on the 25th of April, 1922, and she immediately turned it over to Chew and the evidence is that its contents were not brought to the attention of the defendant. On the same day the defendant and Chew met at the Mechanics' Bank in the city of Richmond and completed the transaction for the sale of the premises. Chew executed his grant, bargain and sale deed and delivered the same to the defendant, who at the same time delivered his promissory note in the sum of $1,000, payable on or before the first day of July, 1922. The defendant immediately delivered his deed to an officer of the Mechanics' Bank, to whom he advanced sufficient funds for the payment of the internal revenue taxes and for the recordation of the instrument, and who, in turn, promised to see that it was duly recorded. Thereafter, and on April 27th, the said Chew executed and delivered to the plaintiff a deed purporting to convey all his right, title and interest in and to the said property to the plaintiff. This document, which is in the usual form of a grant, bargain and sale deed, contains a paragraph inserted between the conveying clause and the description of the lands purported to be conveyed, which reads as follows: "All my right, title and interest which I may now have or hereafter acquire in all Real, Personal and Mixed Property of whatever kind or nature or wheresoever situate." This deed was duly recorded on the fourth day of May, 1922, and the prior deed executed to the defendant was duly recorded on the day following. The consideration for the deed to the plaintiff was found to be the sum of $1,500, part of which the plaintiff testified she had advanced to Chew in small amounts over a considerable period of time following his purchase of the property, and part of which she claimed for board and lodging of Chew while she was living with him. The trial court also found that prior to the making and execution of the deed from Chew to plaintiff she did not make any inquiry from the defendant or any other person concerning what interests or right the defendant had in the premises and that "at the time she received the aforesaid deed from Chew (she) had no actual notice or knowledge that Chew had previously conveyed the said premises to Ostergard."

There are further facts appearing in the record upon which the trial court did not find which are important as bearing upon the issue raised by the defendant that the plaintiff had constructive knowledge of defendant's interests and that she was not a purchaser in good faith. In this connection it was shown that the plaintiff had been informed of the existence of the lease by both Chew and the defendant; that she had been frequently informed of defendant's intention to exercise the option contained in the lease and to purchase the property; that as early as April 21, 1922, she knew, or at least had reason to believe, that a sale was contemplated and that an agreement for sale existed between Chew and the defendant, as on that date she attempted to notify the defendant through her attorney that she would treat the agreement to sell, as well as any contemplated conveyance, as a fraud on her; that within a day or two after the execution of the deed to the defendant—April 25th—the plaintiff discussed the transaction with Mr. Downer, president of the Mechanics' Bank of Richmond, informed him that the property had been transferred to the defendant and stated that it would be necessary for her to consult her attorneys in order to protect her interests. It is in the testimony of this witness also that during this conversation nothing was said by the plaintiff regarding any deed having been made to her, and the inference may be properly drawn that the entire conversation took place prior to the date of the execution of the deed of Chew to the plaintiff. In addition to this it appears that the deed from Chew to the plaintiff was executed in the office of one of plaintiff's attorneys, who witnessed its execution and that this deed contained the insertion not common to an ordinary grant, bargain and sale deed to the effect that the grantor was conveying all his "right, title and interest" which he might have in the property.

The actions of the plaintiff subsequent to the execution and delivery of the two deeds have an important bearing upon the issue of good faith on the part of the plaintiff, particularly as this is an action in equity in which the element of good faith is of first importance. It appears that immediately after the passing of the deeds Chew began to make insistent demands upon the defendant for moneys on

account of the balance of the purchase price which was evidenced by the defendant's promissory note due July 1, 1922. These calls were made almost daily and payments were made to Chew in small amounts, either by the defendant directly or by his agent. On nearly all of these occasions the plaintiff was present with Chew and frequently took from Chew a part of the money which he received from the defendant. On other occasions the plaintiff would come herself to the home of the defendant and wait for the arrival of Chew for the purpose of collecting money from the defendant. The evidence is that the plaintiff knew at all times that these moneys which the defendant paid to Chew were being paid on account of the purchase price of the premises and that she participated in the fruits thereof. On May 20, 1922, the defendant's note was paid in full and canceled, and Chew executed to the defendant his receipt for the payment of the full sum of $3,000. This transaction consisted of the payment to Chew by the defendant of $300 in cash, the delivery to him of a draft in the sum of $500, payable upon a bank in the city of Ukiah, and the delivery to him of an automobile valued at $700. It does not appear that the plaintiff was present on this occasion, but it does appear that immediately thereafter Chew went to Ukiah and that on his return, some time in July, he delivered to the plaintiff an automobile. On May 29, 1922, Chew executed to plaintiff an assignment of all moneys due or to become due him from the defendant arising out of the sale of the property in controversy, and on June 1st of the same year appointed and designated one of the plaintiff's attorneys as his attorney in fact and at law for the purpose of enabling said attorney to appear for said Chew in all matters, legal or criminal, and particularly in the matter of Chew against this defendant, to demand, sue for, or collect all sums of money which may be owing to said Chew. This power of attorney was made irrevocable because it conferred upon the said attorney an equal one-half of the value of what he might recover. Notice of the execution of this document was served upon the defendant by letter addressed to him by the said attorney, acting as attorney in fact and attorney at law for both Mr. Chew and Mrs. Chapman.

[1] It is argued on the part of the appellant that because of the provisions of section 1214, Civil Code, her deed hav-

ing been recorded prior to that of the respondent, the latter is void and she is, therefore, entitled to a decree quieting her title to the property. The priority of appellant's recordation is not disputed and the trial court found that the conveyance was made for a valuable consideration, a finding which is binding upon the respondent on this appeal because there is some evidence which supports it. However, an essential requirement of the code section is that the subsequent purchaser must have purchased in good faith. Upon this issue the trial court did not make any finding, and we are unable to conceive, in view of all the facts above related, how, if the trial court had made a finding on that issue, it could have been favorable to the appellant. [2] Unquestionably, the burden of proof is on the appellant to show that she had made the purchase in good faith and without notice, actual or constructive. The rule is laid down in *Eversdon* v. *Mayhew,* 65 Cal. 163, 167 [3 Pac. 641, 644], where the court says: "To entitle a party to protection as such a purchaser he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, prior to and down to the time of its payment." This rule has been approved in all the later authorities which are aptly discussed by Mr. Justice Shaw in *Bell* v. *Pleasant,* 145 Cal. 410 [104 Am. St. Rep. 61, 78 Pac. 957].

[3] The purpose of the code section is to protect the innocent and *bona fide* purchaser from one who may procure a deed with an earlier date for the purpose of defrauding the other. It was never intended that the section should be applied to defraud one who has in good faith and for a valuable consideration purchased property and who has delayed placing his conveyance of record. The trial court here found that at the time of the execution of the appellant's deed she did not have *actual* knowledge of the existence of respondent's deed and that she did not take her conveyance for the purpose of defrauding the respondent. However, it did not have actual notice of the existence of respondent's notice of the existence of respondent's conveyance or that she was acting in good faith. From the reading of the entire record we are inclined to believe that the finding of the trial court as to the want of actual notice on the part

of the appellant was a more favorable finding than she was entitled to, but as we have said, there being some evidence to support it, we must accept that finding as conclusive here. There is no escape from the conclusion, however, that if she did not have actual notice of the existence of respondent's conveyance she had every opportunity to obtain knowledge of that fact, and furthermore, that if she did not have actual notice thereof prior to the execution of her own conveyance she certainly did have actual notice before she recorded it. The fact that when Chew executed his conveyance to her in the presence of her attorney he inserted the paragraph which is commonly known as a "quit claim" clause, or a safety valve to relieve the grantor from the responsibility of a fraudulent conveyance of a title which he did not possess, cannot be viewed in any other light than that the appellant and her counsel (who were also the counsel for Chew) knew or had some intimation that Chew was not legally capable of passing to the appellant a clear title. In addition to this all the subsequent acts of the appellant, her participation in the fruits of the sale, her acquiescence in respect to the continued possession and improvement of the premises, compels the inference which we must draw in support of the judgment that she was not acting in good faith.

[4] On this appeal the appellant has raised for the first time the point that the facts show the existence of an express trust concerning the property wherein Chew was the trustee and the appellant was the beneficiary. This claim is based upon the testimony of the appellant, which was brought out on cross-examination and which is to the effect that when Chew purchased the property, in October, 1921, he told the appellant that he would give her half of it. This agreement, the appellant testified, was made after Chew purchased the property. There was no testimony that the appellant advanced any of the money that went into the property; there was nothing to show the creation of a constructive trust, and there was no evidence showing any writing of any nature indicating the creation of an express trust. Upon the testimony of the appellant she bases her claim at this time that an express trust was created, and argues that the statutory provisions requiring such trusts to be in writing are not applicable here because they merely fix a rule of evidence governing the manner of the proof of agreements creating

trusts in realty. It would serve no purpose to discuss the rules of law involved because the facts show indisputably that the appellant did not at any time during the entire transaction, nor at the time of the trial in the court below, believe or understand that any trust had been created and no intimation of the purpose to ·claim the existence of such a trust was made at the time of the trial so that the respondent would be enabled to meet it with evidence. From the reading of the entire record the conclusion necessarily follows that the advancements which the appellant made to Chew were in the most cases simply gifts which she did not expect to be returned; that no proof was made of any promise to repay any of these advancements to Chew at the time, and no writing of any kind was produced by the appellant, either acknowledging receipt of any of these moneys by Chew or obligating him to pay them. We cannot escape the conclusion that any promise which he made to her regarding the property was nothing more than an agreement to secure her for some of the moneys advanced, and all the circumstances leading up to the transaction of April 27th and following indicate that these transactions were had for the same purpose, particularly as the amount claimed to be due by the appellant was $1,500, whereas the admitted value of the property conveyed on April 27th was $7,000, upon which was a bank mortgage of $4,000, executed by Chew alone. The actions of the appellant in accepting the moneys and the automobile from Chew after the sale are alone sufficient to negative any theory that a trust in the property was contemplated by the parties at any time prior to this litigation.

The outstanding consideration in the case is that the appellant failed to sustain the burden of proof that the conveyance to her was taken in good faith and without constructive knowledge, at least, of the interests of the respondent. Though the trial court did not find upon either of these issues, we are unable to conceive from the evidence how any finding could have been made favorable to the appellant. This being an action in equity, and the burden of proof being upon the appellant to prove the equities in her favor, we must assume in support of the judgment that the trial court would have found against her if a finding had been made. She is not, therefore, injured by the failure to find

thereon. (*Hulen* v. *Stuart*, 191 Cal. 562, 572 [217 Pac. 750].)

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1925.