[L. A. No. 9939. In Bank.—July 1, 1929.]

JAMES P. MURNANE, as Administrator, etc., Plaintiff and Appellant, v. MARIE LE MESNAGER et al., Defendants and Appellants; JEANNE LE MESNAGER, Cross-Complainant and Respondent.

George A. Connolly and Dockweiler & Dockweiler & Finch for Plaintiff and Appellant.

Overton, Lyman & Plumb for Defendants and Appellants.

J. C. Flannery, William P. Hubbard, John S. Leahy and Joseph Scott for Cross-complainant and Respondent.

WASTE, C. J.—There are presented herein three appeals from a judgment determining the respective rights and interests of certain of the parties hereto in and to certain described property, and removing and appointing a trustee thereof. The several parties, whose first names only will be frequently used to designate them, are in substantial agreement upon the following facts: George Le Mesnager, Sr., a native of France, came to the United States and to California some time prior to the year 1877. His first wife, Concepcion Le Mesnager, died in 1892, leaving as her issue four children, viz., Louis, George, Jeanne and Louise. Two years subsequent to the death of his wife, George Le Mesnager, Sr., married the defendant, cross-defendant and appellant, Marie Le Mesnager. The issue of this marriage was one daughter, Yvonne Le Mesnager, now known as Yvonne Fraval de Coatparquet, also named as a defendant and cross-defendant herein. By the execution of two deeds, one prior and one subsequent to his second marriage, George Le Mesnager, Sr., transferred and conveyed to Marie Le Mesnager, his second wife, all of the real property herein involved, situate in the county of Los Angeles. Thereafter, and in 1906, for business convenience, there was organized, under the laws of this state, a corporation known as the Mesnager Land & Water Company. The only stock ever issued by this corporation was ten shares to George, Sr., president; 280 to Marie, vice-president, and ten shares to Louise, secretary-treasurer. In the month of June, 1906, Marie Le Mesnager transferred to this corporation all of the property theretofore conveyed to her by her husband. At the outbreak of the World War, George Le Mesnager, Sr., went to France to assist the cause of his native country. In the year 1916 he returned to Los Angeles on furlough. The hazard incident to his proposed return to the war zone apparently prompted him to seriously consider making disposition of his wordly accumulations among the several members of his family, and on June 16, 1916, he caused the Mesnager Land & Water Company to transfer and convey to his two sons, through the regular corporate channels, a described parcel of land containing some 1540 acres. This was accepted by the grantees as their interest and share in and to all of their father's property. Three days thereafter,

or on June 19, 1916, a second deed was executed and delivered by the corporation. As this entire cause revolves around this deed, we quote it in part as follows:

"This Indenture, made the 19th day of June, in the year of Our Lord nineteen hundred and sixteen, between the Mesnager Land & Water Company, a corporation, duly incorporated at Los Angeles according to the laws of California, the party. of the first part, and Marie Le Mesnager of the same city, county and state, the party of the second part,
"Witnesseth:

"That the said party of the first part, for and in consideration of the sum of five dollars ($5.00) and other valuable considerations, gold coin of the United States of America, to said company, in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has remised, released and forever quit-claimed, and by these presents does remise, release and forever quitclaim, unto the said party of the second part and to her heirs and assigns, all that certain lot, piece, or parcel of land, situate, lying and being in the county of Los Angeles and state of California, and bounded and particularly described as follows, to-wit: . . . [here follows a description of the property.]

"Said quitclaim and interest into the said land herein described or if sold by the party of the second part, the amount of money or other consideration derived for the sale to revert to Yvonne Le Mesnager and Louise Le Mesnager after the death of second party or before, just as she may judge to be the best, trusting to her also that she will reasonably and according to what she thinks is right, furnish a dower to Jeanne Le Mesnager. Any sale made by second party shall be final and without any recourse or hindrance against the purchaser.

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title interest, into the said property possession; claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in or to the said premises, and every part and parcel thereof with the appurtenances. . . . "

Marie received and accepted this deed, and caused it to be recorded. Subsequent to the execution of this latter deed, George Le Mesnager, Sr., returned to France, where he remained until the close of hostilities. The year 1919 found him again in California. In March, 1922, he and his wife Marie gave to one W. S. Sparr, named as a defendant herein, an option to purchase for $635,000 all but a small fraction or portion of the lands conveyed to Marie by the deed quoted from above. This option was thereafter acted upon, and Marie, her husband joining with her, transferred to the defendant D. P. Putnam, nominee of the option holder, 1234.10 acres of land, the amount covered by the option. Fifty thousand dollars of the agreed purchase price was paid upon delivery of the deed, and the balance, secured by mortgage, was to be paid in annual installments of an equal amount. The deferred payments were to bear interest at the rate of seven per cent per annum. Shortly thereafter, and in the year 1922, Marie and her daughter Yvonne moved to France, where they have since resided. George Le Mesnager, Sr., died in September, 1923.

This action was instituted by the surviving husband of Louise, a daughter of the first marriage, as administrator of his deceased wife's estate, to have the deed of June 19, 1916, construed, and to have it judicially determined and decreed that the estate of the deceased daughter was the owner of an undivided one-half interest in the property conveyed by said deed, or in its proceeds, subject only to a life estate in favor of Marie and to the rights of the defendant Jeanne, also a daughter of the first marriage. When this action was commenced, the defendant Marie had collected on the principal of the mortgage approximately $200,000. There remained unpaid on account of interest a sum in excess of $140,000. Marie still retains title to a small fraction (51.15 acres) of the parcel conveyed to her for life by the corporation, which is of an approximate value of $50,000.

In accordance with the prayer of the amended complaint, the trial court appointed the Pacific-Southwest Trust & Savings Bank as receiver, and issued an injunction *pendente lite*. Answers to the amended complaint were duly filed by the defendants Marie, Yvonne and Jeanne. The latter filed, also, a cross-complaint, later amended, in which, after alleging many of the matters above narrated, it is prayed that

she be adjudged to be the owner of and entitled to an undivided one-third interest in the property conveyed by the Mesnager Land & Water Company to the defendant Marie, or in the proceeds thereof, subject only to a life estate in Marie. The appointment of a receiver and the removal of Marie Le Mesnager as trustee was also requested. When the cause came on for trial, it was announced that a settlement had been reached between the plaintiff and the defendants Marie and Yvonne Le Mesnager. This resulted in the cause going to trial solely upon the amended cross-complaint of Jeanne and the answers thereto. This amended cross-complaint became the basis of the judgment which was entered, and from which the appeals, brought here on a single transcript, are being prosecuted by the defendants and cross-defendants Marie and Yvonne Le Mesnager and the plaintiff and cross-defendant James P. Murnane, as administrator of the estate of his deceased wife.

The cross-complaint of Jeanne Le Mesnager, which, therefore, becomes of the greatest importance, after setting forth many of the matters hereinabove related, avers, in substance, that at the time of the execution and delivery to Marie of the corporate deed, the provision thereof reading, ''Said quitclaim and interest into the said land herein described or if sold by the party of the second part, the amount of money or other consideration derived for the sale to revert to Yvonne Le Mesnager and Louise Le Mesnager after the death of second party or before, just as she may judge to be the best, trusting to her also that she will reasonably and according to what she thinks is right, furnish a dower to Jeanne Le Mesnager,'' was orally agreed by and between George Le Mesnager, Sr., and Marie Le Mesnager, named therein as life tenant, to mean and intended to mean, and at all times should be construed to mean, that Marie held the property therein described in trust for the use and benefit of the *three* daughters of George Le Mesnager, Sr., viz., Louise, Jeanne and Yvonne, each of whom should receive an undivided one-third interest therein upon the death of Marie Le Mesnager; that such understanding and agreement was the sole consideration and inducement and the moving cause for the execution and delivery of said deed; *that subsequently and in May, 1922, Marie Le Mesnager re-nounced such trust and claimed to be the owner of the prop-*

*erty free and clear and discharged of any trust in favor of the three daughters, as intended in said deed, and as orally understood and agreed* (italics added); that upon learning of Marie's changed attitude of mind, George Le Mesnager, Sr., threatened to institute legal proceedings against her looking to the recovery of the property unless she executed a writing evidencing the purport and terms of such prior oral agreement and understanding as to the respective rights of the three daughters in and to the property; that George Le Mesnager, Sr., refrained from instituting such legal proceedings on the promise of Marie to execute such written declaration of the trust under which it had theretofore been agreed and always understood she held the property; that up to the time of his death in 1923, George Le Mesnager, Sr., placed full faith and reliance on said promise of Marie Le Mesnager, and believed that she had executed the writing agreed upon; that Marie, on the other hand, never intended to comply with her promise in this regard, and consequently did not execute such written declaration of trust, but, on the contrary, steadfastly refused to do so, *and subsequent to the death of George Le Mesnager, Sr., renounced the trust in favor of the three daughters and under and subject to which she was to hold the property during her lifetime.* (Italics added.) The cross-complaint then prays, among other things, that it be decreed that the cross-complainant was at all times from and after the contemporaneous oral agreement, above referred to, between George Le Mesnager, Sr., and Marie Le Mesnager, and up to the time of the sale of the greater part of the property to the defendants Sparr and Putnam, the owner of and entitled to an undivided one-third interest in and to all the property conveyed by the corporation to Marie, and after such sale was, and ever since has been and now is the owner of and entitled to an undivided one-third interest in and to the proceeds of such sale; that it be further decreed that Marie Le Mesnager never has been the owner of said property or any part thereof, or of any interest therein, other than having been invested with the right to have and take the rents, issues and profits thereof during her lifetime, and "that she has *at all times* been holding the title to an undivided one-third interest therein, as trustee for the use and benefit of cross-complainant . . . " (Italics added.)

More briefly stated, the cross-complaint is drawn on the theory that the property transferred by the corporation to Marie Le Mesnager for life came to her, by virtue of the contemporaneous oral agreement and understanding of George Le Mesnager, Sr., and the grantee, subject to and impressed with a trust in cross-complainant's favor as to an undivided one-third interest, and that Marie had, subsequent to the death of George Le Mesnager, Sr., renounced such trust. The allegations of the amended cross-complaint were generally, or specifically, denied by the plaintiff and other cross-defendants, who, in their answers thereto, reiterated their allegations to the effect that the two sisters of Jeanne, or, rather, that Yvonne and the estate of Louise, are each the owners of an undivided one-half interest in the property conveyed by the deed of June 19, 1916, and in its proceeds, subject to a life estate in favor of Marie Le Mesnager, and subject, also, to a dower interest in favor of the cross-complainant Jeanne. Certain of the cross-defendants alleged, more specifically, that Marie Le Mesnager, so far from repudiating the trust, has at no time asserted that she was the owner of the real property conveyed by the deed, but has at all times recognized that all her rights were governed by the terms of that instrument. They also specifically allege that Jeanne has no interest in the matter other than the power of Marie Le Mesnager to furnish her (Jeanne) with a dower in case of the latter's marriage.

Such were the well-defined issues when the cause came on for trial. The plaintiff and the defendants Marie and Yvonne, having reached a settlement, the trial proceeded upon the amended cross-complaint of Jeanne Le Mesnager and the answers thereto. The cross-complainant was thereupon called as a witness in her own behalf, and sought to show a different state of facts from those alleged in her cross-complaint. In the language of her counsel, instead of proceeding to establish the trust as to a definite one-third interest under the oral understanding and agreement pleaded, she proposed to show that she was entitled, under the terms of the deed, to a ''dower,'' the amount of which was not fixed or definite, but was ''purely within the discretion'' of Marie Le Mesnager, who ''had the right, under that instrument to exercise that discretion at any time''; and that she (Marie) had exercised it. Over the objection of

the adverse parties that they were surprised and that the proof offered was not in accord with the allegations of the cross-complaint and was, therefore, incompetent, irrelevant and immaterial, and not binding on the adverse parties, the cross-complainant was permitted to testify and to offer other proof that her stepmother had declared to her that the property conveyed by the deed had been transferred to her (Marie) ''during her life and that she was to receive all the proceeds and then after her death it was to be equally divided among'' the three girls, Louise, Yvonne and Jeanne, the cross-complainant.

Timely objection to the offer of proof and the evidence on which the findings rest was made by the parties adverse to the cross-complainant that such evidence was *res inter alios acta,* and not binding upon the other parties to the deed, being a declaration made by the defendant Marie without the consent or knowledge of such persons. These objections were overruled. The trial court made findings which purport to respond to the substituted theory of the cross-complainant and to conform to the evidence received over the objection of the cross-defendants. These are to the effect that, during the time George Le Mesnager, Sr., was home on furlough from the war in France, he requested Marie Le Mesnager, ''as trustee under the terms of the deed dated June 19, 1916, to her from said Mesnager Land & Water Company, to exercise the right and duty given her by said deed to state, determine and fix what portion or sum or dower Jeanne Le Mesnager was to take in said real property or in the proceeds derived from the sale of the whole or any part thereof. Thereupon, said defendant and cross-defendant Marie Le Mesnager declared Jeanne's dower or portion was then and there fixed by her at and was one-third of said real property or one-third of the proceeds derived from the sale of the whole or any part thereof; and that each of the other daughters, Louise and Yvonne, would thus likewise receive a one-third interest . . . that . . . she . . . Marie Le Mesnager should take and receive for her own use and benefit during her life, only the rents, issues and profits . . . and that upon her death the said real property remaining unsold and the *corpus* of the proceeds derived from any sale or sales of all or any part of said real property should be divided, the one-third to each of said three daughters,

i. e., Louise, Jeanne and Yvonne, share and share alike."
Further findings are to the effect that Marie Le Mesnager
agreed that she would execute, acknowledge and deliver a
"writing making declaration of trust setting forth specifi-
cally the portion of the real property or the portion of
the proceeds derived from the sale of the said real property
or any part thereof, which she as trustee under said deed
had fixed as a dower for Jeanne Le Mesnager and specifically
setting forth the terms of her agreement with the said George
Le Mesnager, Sr., deceased, as to her declaration, interpreta-
tion, construction, intention and meaning of the provision con-
tained in said deed respecting and concerning the interest of
the said Jeanne Le Mesnager in and to said real property
or the proceeds derived from the sale . . . that [she] never
has executed or delivered any such writing . . . but . . . has
from time to time declared to . . . Jeanne Le Mesnager
and other members of the family . . . and to others, that the
foregoing [the agreement between George, Sr., and Marie
found by the court] was the construction as agreed upon
between her and the said George Le Mesnager, Sr., deceased,
as to the terms of said deed with reference to the rights of
herself and of the three daughters in and to the said real
property and the proceeds derived from any sale or sales
thereof." Other findings are that the interpretation of the
language of the deed of June 19, 1916, and the declaration
by Marie Le Mesnager as to the exercise of her right and
duty, as trustee, in fixing and declaring that Louise, Jeanne
and Yvonne should receive a one-third interest in the re-
mainder of the trust "was reasonable, right and just, consid-
ering . . . all the surrounding circumstances," and that the
provisions in the deed respecting cross-complainant Jeanne
Le Mesnager and the interpretation of the right of Marie
to declare the interest of Jeanne "were never intended by
either George Le Mesnager, Sr., deceased, or the defendant
and cross-defendant, Marie Le Mesnager, to be dependent
upon, limited by, or in anywise affected by her marriage
or failure to marry, her entering a convent or failing to
enter a convent, or any other restriction except fair, just
and proper distribution of the property conveyed by said
deed, or the proceeds derived from the sale thereof, among
the daughters" of George, Sr., and Marie, "taking into
account the circumstances, conditions and provisions that

had been made for all of the children" of said George, Sr., and Marie.

Judgment resting on these findings was entered as prayed for by Jeanne in her amended cross-complaint.

■ An answer to the suggestion that there was in this case a failure of proof to support the judgment is found in the statute which provides that where the allegations of the claim or defense to which the proof is directed are unproved only in some particular or particulars, but not in its general scope and meaning, the case is merely one of variance. (Code Civ. Proc., sec. 471.) And full and adequate remedy could have been afforded all parties by an order of amendment of the pleading upon such terms as might be just. (*Pollitz* v. *Wickersham,* 150 Cal. 238, 250 [88 Pac. 911], citing Code Civ. Proc., sec. 469.) ■ Variance between the allegations in a pleading and the proof is not to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. ■ The code also provides that the court must, in every stage of an action (and that means on appeal, as well as in the trial of the cause), disregard any error, improper ruling or defect in the pleadings or proceedings, which, in the opinion of the court, does not affect the substantial rights of the parties. ■ It must appear from the record that the error, improper ruling or defect was prejudicial and caused substantial injury before the judgment rendered may be reversed or be held to be affected by it; and it must further appear that a different result would have been probable if such error, ruling or defect had not occurred or existed. (Code Civ. Proc., sec. 475.) ■ Not only do these code sections require this court, under such circumstances, to determine from an examination of the entire record, whether or not there has been a miscarriage of justice before reversing a judgment, but the state constitution is equally mandatory and imperative. (Const., sec. 4½, art. VI.) It therefore indubitably follows that it is not every variance that will necessitate the overthrow of a judgment. (*Taylor* v. *Morris,* 163 Cal. 717, 724 [127 Pac. 66].)

■ Where a variance is not material, and does not actually mislead the adverse party to his prejudice, the court may find the facts according to the evidence, or may order an immediate amendment without costs. (Code Civ.

Proc., sec. 470.) If it appears that the party has been misled, the court may order the pleading to be amended upon such terms as may be just. In this case, the trial court, after a careful perusal of the pleadings, and a consideration of the deed about which the cause revolved—an instrument which the court well characterized as one "that is not altogether clear"—announced to the counsel for the respective parties that the case appeared to be one in which it would be necessary "to be more or less liberal as to the evidence," in order to determine the cause; but if the then situation was one of surprise, and prejudicial to their clients, it would continue the matter and give more time for preparation; and if that were not desired, the court would proceed, and "at the conclusion of the trial," if necessary, upon motion of counsel "for any of the litigants to amend their pleadings," they would be permitted to do so. With this understanding the parties appear to have been willing to and did proceed with the trial, reserving their objections, on various grounds, to the introduction of the evidence. The elements of "surprise" and being "misled" need not, therefore, be further considered, for the appellants were accorded suitable opportunity to protect themselves against, or to recover from either.

The question, then, to be considered is whether the admission of the evidence tending to substantiate the new theory of the cross-complaint—evidence not responsive to the facts pleaded in the amended cross-complaint—worked any material prejudice to the cause of the adverse parties. ██ We are not losing sight of the fundamental principle of pleading that "a plaintiff must recover, if at all, upon the cause of action set out in the complaint, and not upon some other which may be developed by the proofs." (*Schirmer* v. *Drexler*, 134 Cal. 134, 139 [66 Pac. 180]; *Reed* v. *Norton*, 99 Cal. 617 [34 Pac. 333].) The *allegata* and *probata* must correspond, and a judgment rendered upon a cause of action not set up in the complaint, and not warranted by its averments, cannot be sustained either upon principle or authority. (*Elmore* v. *Elmore*, 114 Cal. 516, 519 [46 Pac. 458]; *Chetwood* v. *California Nat. Bank*, 113 Cal. 414 [45 Pac. 704].) But the doctrine of variance and the penalties to follow when it appears has been greatly mitigated in this state by the

provisions of our code (*Higgins* v. *Graham*, 143 Cal. 131, 134 [76 Pac. 898]), which have already been referred to.

In this case the cross-complainant was asserting a right to an undivided one-third interest in and to real property under the terms and provisions of a deed which she set out in her pleadings. Under the proofs adduced by her at the trial, she continued to assert her right to the same interest in the same property under the same deed. By means of the evidence introduced by her, her claim, as presented in her cross-complaint, was not unproved in its general scope and meaning, but only in some particulars. As to those particulars, it seems to us, as it did to the trial court, the parties adverse to the cross-complainant were accorded every opportunity to meet the evidence which was produced by her. The deed under which all the parties claimed an interest in the property permits of the construction contended for by the cross-complainant in introducing her evidence, and was accepted by the trial court, whose duty it was to pass upon its terms and effect. It is immaterial to us what was meant by the parties who caused the deed to be executed when they used the word ''dower'' in providing for Jeanne's portion. The trial court has found that, under the discretion given the trustee, Marie, she fixed and determined that portion to be an undivided one-third interest, and that under the circumstances surrounding the execution of the deed, including the deed itself, the exercise of discretion by the trustee, Marie, was justified, and that the result was equitable and just to all the parties to the litigation. Whether or not all she did in the premises was a sufficient declaration of the interest Jeanne should have, and whether or not she did all things she was claimed to have done in that regard were matters for the determination of the trial court. We are not prepared to say that the evidence does not support its conclusions in both matters.

We find no prejudicial error in the refusal of the trial court to permit the cross-examination in court by appellants of the witness Haas, who had previously testified by deposition. The court permitted the appellants to call Haas as their own witness, and that was done.

As, under the sections of the code (Code Civ. Proc., secs. 469 and 470, *supra*), where the variance is not material, the

court may either direct the fact to be found according to the evidence or may order an immediate amendment, it having adopted in this case the first course, and found the facts in accordance with the evidence, the judgment is affirmed.

Shenk, J., Richards, J., Seawell, J., Curtis, J., and Langdon, J., concurred.

Preston, J., dissented.

Rehearing denied.

All the Justices present concurred.