[Civ. No. 2646.   Fourth Dist.—May 12, 1941.]

MURRAY L. RABBIT, Appellant, v. ROBERT W. ATKIN-
SON et al., Defendants; ALVIN STUBENVOLL et al.,
Respondents.

Morris McLaughlin and Leslie S. Bowden for Appellant.

Benjamin Hansen, Francis W. Bunnett and Stanley M. Arndt for Respondents.

GRIFFIN, J.—This is an action brought by plaintiff and appellant to quiet title to certain real property in the city of Los Angeles and to cancel certain instruments. Respondents Alvin Stubenvoll and Helen Stubenvoll filed separate answers denying the material allegations of the complaint.

Defendants Robert W. Atkinson and Margaret Atkinson filed a disclaimer to any right or title in the property. The action against Lewis W. Osborne, Inc., and E. R. Gelberg and E. C. Agnew, doing business as Technical Neon Laboratories, was dismissed by appellant. The other named defendants failed to answer plaintiff's complaint and default was regularly entered. Trial of the action was had without a jury, and after plaintiff rested respondents introduced evidence in defense.

The facts of the case, which respondents are entitled to have viewed in the most favorable light in support of the judgment (2 Cal. Jur., p. 879, sec. 515) may be thus summarized: On April 1, 1935, Theodore and Waldo Wiems, doing business under the name of Advance Plumbing and Heating Company (hereinafter called Advance), recovered a judgment for certain work and material furnished on the property herein involved, in the Municipal Court of Los Angeles County against Robert W. Atkinson and Margaret Atkinson, his wife, for $136.79 principal, and $10.85 costs. Thereafter, the judgment creditor, Advance, caused execution to be levied upon the interest of the judgment debtors Robert and Margaret Atkinson in and to the real estate referred to in the evidence as the Crenshaw property. This property was worth $35,000 at the time of the trial. On December 3, 1935, Advance, the judgment creditor, purchased the interest of the judgment debtors Robert and Margaret Atkinson in the Crenshaw property at execution sale, for $184.74. Thereafter, the marshal's deed was issued to Advance. Advance then executed and delivered to appellant herein a deed to the property. This deed was recorded September 8, 1937, three days before the complaint herein was verified and filed. The deed recites a consideration of $10, and bears only the minimum amount of federal revenue stamps, i. e., fifty cents. No evidence was offered that any consideration ever passed and no claim is made by appellant that any consideration whatsoever was paid in connection with the deed. At the time of the execution sale, and at the time of the issuance of the marshal's deed, and at the time of the delivery of the deed from the judgment creditor to appellant herein, *record* title to the property in dispute was not in the name of the judgment debtors but was in the name of respondent Alvin Stu-

benvoll subject to a $25,000 mortgage to respondent Helen Stubenvoll.

The record further shows that Jacob Stubenvoll was the father of Margaret Atkinson, Helen Stubenvoll and Alvin Stubenvoll. He turned over $10,000 in cash and security to his son-in-law Robert Atkinson, the husband of his daughter Margaret Atkinson, to invest and reinvest for the benefit of his three older children Margaret, Helen and Alvin. He considered that Robert was quite clever in buying stocks and he wanted to see that his three oldest children were taken care of. He intended to take care of his wife and other children in other ways. Robert accepted the trust and carried on operations as trustee, but in his own name. He was quite successful in the stock market. By 1927, the $10,000 trust fund mounted to $35,000. Early in 1927, Robert and his wife Margaret came to California. When he left New York the $35,000 trust fund was in the hands of a New York brokerage firm. After the Atkinsons reached California the money was transferred to Hutton & Company in Los Angeles and from there sent to the Bank of America in downtown Los Angeles. From this $35,000, the land here involved was bought as a vacant lot and the building erected and various other pieces of property were purchased and buildings erected thereon. Subsequently and prior to the execution sale, a settlement took place between the three beneficiaries whereby Mrs. Margaret Atkinson received certain cash and certain real property other than the property here involved, while respondents were given the Crenshaw property as their share. The record title to the property here involved still remained in the name of Robert Atkinson, who it is claimed was actually a mere trustee for the three children.

In an attempt to have the record show respondents' interest in the disputed property, Robert and Margaret Atkinson, on November 28, 1934, executed a mortgage in the sum of $25,000 on the property to Helen Stubenvoll and then executed and recorded a deed from them to one Rose Murphy, under the name of Grose, subject to the mortgage, without her knowledge, and without delivery of the deed, and later had her make a deed of the property to respondent Alvin Stubenvoll.

On February 23, 1938, the case was submitted to the court. Two days later the court made an order reopening

the case for trial and suggested or ordered that a certain amended answer be filed alleging "that Atkinson, although he was the legal owner of the property, or held the legal title, he was, in fact, the trustee for Margaret, Helen and Alvin Stubenvoll . . . that they . . . were the equitable owners, and, therefore, the real owners at the time, and . . . to show, in addition to the other allegations of the present answers now on file, that the Advance Plumbing and Heating Company, at the time the sale was conducted by the marshal, were not purchasers for value and without notice". The court then found in accordance with the defense set forth in the amended answer. ▉ The judgment recites that after the case was reopened, appellant filed in the clerk's office a "motion for dismissal" as to Helen Stubenvoll. Whether this motion was presented to the court for consideration or whether it was acted upon is not shown by the record. No entry of dismissal was made in the clerk's register. We must presume, therefore, that the purported dismissal was not effective. (*Hauptman* v. *Heebner,* 34 Cal. App. (2d) 600 [94 Pac. (2d) 48].)

The judgment was signed March 25, 1938, and quieted title in respondents, but awarded appellant judgment for $147.64, and declared this sum to be a lien upon the property involved. Respondents were declared the equitable owners of the property involved subject to the lien mentioned; the deeds from the Atkinsons to Grose and from Grose to Alvin Stubenvoll were declared void. On May 2, 1938, when a motion for new trial was heard, a signed stipulation between the attorneys for Alvin Stubenvoll and appellant was filed, agreeing that the portion of the judgment entered in favor of appellant may be amended and increased to $184.74, plus 12 per cent interest, and $270.50 costs. The motion for new trial was then denied. Thereafter, on June 22, 1938, the original judgment was interlineated in accordance with the stipulation. On May 9, 1938, appellant appealed from the original judgment.

Appellant contends that he is entitled to have title quieted in him to the property of the value of $35,000, in payment of the $184.74 obligation of his grantor under the theory that Robert and Margaret Atkinson actually owned the property; that they permitted the sale to proceed and did not redeem within the time allowed by law, and that, therefore, they forfeited all rights to the property, and that the appellant

and appellant's grantor, because of the default of Robert and and Margaret Atkinson, should be enriched with $35,000 worth of property in payment of the obligation of $184.74, and that equity should aid in this enrichment; that the story of the trust established by the father of the respondents was "a myth" and that respondents' testimony was untrue, not to be believed, and insufficient to establish a trust.

Respondents argue that at no time did Robert Atkinson ever hold title to the property but merely held bare legal title as trustee for respondents herein; that the purchaser at execution sale could not take better title than the judgment debtors had unless he proved that he was a *bona fide* holder for valuable consideration in good faith and without knowledge.

█ It is clear from the evidence that the record title, at the time of the delivery of the deed from the judgment creditor herein to appellant, was not in the name of the judgment debtor; both had constructive notice of the record title; appellant's grantor knew that the judgment debtor denied any interest in the property in his pleadings in the municipal court and that they had, in supplementary proceedings prior to execution sale, denied any interest in the property. They were placed upon inquiry as to the existence of some right or title in conflict with that which the judgment creditor was about to purchase and were charged with notice of all facts which could have been ascertained by proper inquiry. (*Pellissier* v. *Title Guarantee etc. Co.*, 208 Cal. 172, 184 [280 Pac. 947]; *Olson* v. *Cornwell*, 134 Cal. App. 419, 428 [25 Pac. (2d) 879]; 25 Cal. Jur., p. 837, sec. 283.) █ The fact that appellant was purchasing property of a value of $35,000 in satisfaction of a judgment for $184.74, must be considered in support of the court's finding in this respect. While mere inadequacy of consideration may not be sufficient to deprive one of his position as a purchaser for value, an offer by a vendor to sell for a grossly inadequate price is a circumstance which should place the purchaser on his guard and may be such as to require that he make a reasonable inquiry as to the title of the vendor not disclosed by the records. If the sum which the vendor is willing to take is grossly disproportionate to the value of the thing which is the subject of the negotiation, it is strong proof of a defective title, and sufficient to put a prudent person upon inquiry, and if the purchaser neglects

to prosecute such inquiry diligently, he may not be awarded the standing of a *bona fide* purchaser. (*Dunn* v. *Barnum,* C. C. A. (8th), 51 Fed. 355 [2 C. C. A. 265] ; *Witty* v. *Clinch,* 207 Cal. 779, 783 [279 Pac. 797] ; *Bernstein* v. *Pacific States, etc.,* 19 Cal. App. (2d) 679, 682 [66 Pac. (2d) 699] ; 27 R. C. L., pp. 712, 713, par. 477 ; 2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 600, p. 1126.)

Neither the appellant nor his grantor took the witness stand to testify as to whether or not they had notice or knowledge of respondents' rights or claims or that appellant was a purchaser in good faith, without notice, and for a valuable consideration. Appellant failed to sustain the burden of proof that the conveyance to him was taken in good faith and without constructive knowledge, at least, of the interests of the respondents. (*Chapman* v. *Ostergard,* 73 Cal. App. 539, 545 [238 Pac. 1081] ; *Lindley* v. *Blumberg,* 7 Cal. App. 140 [93 Pac. 894] ; *Black Eagle Oil Co.* v. *Belcher,* 22 Cal. App. 258, 262 [133 Pac. 1153].)

Although the evidence was conflicting as to the terms of the claimed trust and not free from ambiguity, it was the exclusive province of the trial court to determine the credibility of the witnesses, the weight and effect to be given to the evidence, to consider inferences reasonably deducible from it, and from the conflicting evidence determine the disputed fact. All the considerations urged here by appellant respecting the evidence in this case were properly addressed to and considered by the trial court, and out of the conflicting evidence that court has determined the fact and there is substantial evidence to sustain it. This court on appeal cannot interfere with its conclusion. (*Thom* v. *Stewart,* 162 Cal. 413 [122 Pac. 1069].) We have examined the voluminous record and find that there is substantial evidence supporting the finding of the trial court that the respondents were, at the time of the execution sale, equitable owners of the property involved ; that the Atkinsons took title to the property in their names merely as trustees for respondents ; that appellant and appellant's grantor knew or had notice thereof ; and that they were not *bona fide* purchasers for value and without notice.

The record establishes the fact that the Atkinsons held only the naked legal title subject to the trust imposed and that they had no other interest therein. Under the execution sale, only such interest as the judgment debtor may have had in

the property was acquired by the purchaser. Appellant's grantor as well as appellant, acquired no interest in the property except a possible naked legal title subject to the trust imposed with the duty to convey title to the beneficiary or beneficiaries. (*McAlvay* v. *Consumers' Salt Co.,* 112 Cal. App. 383 [297 Pac. 135]; *North* v. *Evans,* 1 Cal. App. (2d) 64 [36 Pac. (2d) 133]; *Anglo-California Trust Co.* v. *Oakland Rys.,* 193 Cal. 451 [225 Pac. 452].)

The only remaining question involved pertains to the claimed error of the court in directing or allowing an amendment to the answers at the time above mentioned, setting up the defenses related and whether that defense conformed to the proof in the case. It was claimed that appellant not only objected to the filing of the amended answers but was denied an opportunity to further plead thereto and was prejudiced by a change in the nature of the defense alleged.

The record does not substantiate this claim for, after the court directed the amendments to be filed Mr. McLaughlin stated: "I would like to have time to plead to it. The Court: All right. But the case is settled . . . it is not open for further hearing, for the production of any further testimony . . . " The record also disclosed the fact that appellant's attorney stated in detail in his opening statement at the trial what he expected to prove, i. e., "This action is to quiet title, and to declare, of course, that the plaintiff herein is the owner of the premises, and to cancel the mortgage and the two deeds. I expect they will say the consideration for the mortgage is that in 1923 or 1924, the sum of $10,000 was given by the father of Margaret Atkinson to three of his children, he then having five children, I believe, and they, in turn, turned it over to Mr. Atkinson for investment in New York City; that he did invest it, and made $35,000 which he brought out to California in 1927, and that he invested the money out here. They claim, evidently, some kind of a trust."

Appellant cannot claim to have been misled, taken by surprise, or prejudiced by the permitted amendment to the answers. Appellant's objection to the amendment was based on the theory that "the plea raises a question that has not been on trial in this case . . . " The allowance of amendments to conform to proof generally rests in the discretion of the trial court. Such amendments may be allowed after the submission of the cause and may be deemed denied. (*Richards*

v. *Tavares*, 105 Cal. App. 261, 269 [287 Pac. 552]; *M. J. Ryan Co.* v. *Brown*, 138 Cal. App. 176 [31 Pac. (2d) 1076]; *Murnane* v. *Le Mesnager*, 207 Cal. 485, 495 [279 Pac. 800].)

In the instant case it is not contended that all the facts relative to the issue were not adduced at the trial. Before it can be held that the allowance of such an amendment was an abuse of discretion it must be shown that the adverse party has been prejudiced thereby, and no reasonable ground for this conclusion appears in the present case. (*McClure* v. *Alberti*, 190 Cal. 348 [212 Pac. 204].)

█ Certain other objections to verbiage of the pleadings are now made for the first time on appeal. No demurrer was interposed or objection made in the trial court to such pleadings. The case was tried and the pleadings treated by all parties as sufficient to raise the issues presented. Those objections cannot be raised now for the first time on appeal. (*Southside Spiritualist Church* v. *National Federation, etc.*, 119 Cal. App. 11 [5 Pac. (2d) 657].) Other similar points raised are not meritorious.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.