[Civ. No. 2805. Third Appellate District.—February 16, 1925.]

## FRED LOONEY et al., Respondents, v. H. R. SCOTT, Appellant.

[1] SERVICES — DRYING APPLE CROP — CONTRACTS — PERFORMANCE — FINDINGS.—In an action to recover for services performed by plaintiffs for defendant in drying defendant's crop of apples, the defendant was not injured by a finding that there was no agreement that plaintiffs should or would thoroughly and properly handle, dry, and cure in a merchantable and marketable condition

said crop of apples, where the trial court thereafter found that the work was all done in a skillful and workmanlike manner, and that the apples were dried and placed in a merchantable condition.

[2] ID.—SUPERVISION OF WORK—FINDINGS—EVIDENCE.—In such action, the evidence was sufficient to justify the trial court in finding that the work performed by plaintiffs was done under the personal supervision of the defendant.

[3] ID. — ORAL CONTRACT — PERFORMANCE — FINDINGS — EVIDENCE — APPEAL.—In such action, it was for the trial court to determine the nature and context of the oral agreement between the parties, and, there being testimony to support the finding that defendant undertook to direct and supervise the work, as well as the finding that the apples were dried in a workmanlike and merchantable condition, such findings are conclusive on appeal, notwithstanding that there is evidence to support contrary findings.

[4] ID.—TIME OF PAYMENT—PLEADING—AMENDMENTS.—In such action, where the plaintiffs alleged that they were to be paid for their services when the apples were shipped to market, and the evidence in some instances showed that a certain town was the contemplated market of the parties when negotiating as to the time when payment should be made for plaintiffs' services, the trial court did not err in permitting an amendment to the complaint at the conclusion of the taking of the testimony, which amendment consisted of the substitution of the name of the town for the word "market."

[5] ID.—COMPENSATION DEPENDENT UPON SALE—DILIGENCE.—Where compensation for services is to be made upon the sale of any article upon which the services have been performed, it is the duty of the other party to use reasonable diligence in making sale or finding a market.

[6] ID.—REFUSAL TO ACCEPT OFFER—BREACH OF CONTRACT—ACCRUAL OF CAUSE OF ACTION.—Refusal on the part of the defendant to accept an offer at the market price for his apples would authorize an immediate institution of suit by the plaintiffs to recover compensation for their services; and under such circumstances deliberate refusal to make sale constitutes a breach of the agreement.

[7] ID.—NEW TRIAL—PROPER DENIAL OF.—In such action, a motion for a new trial was properly denied where such motion was supported by a number of affidavits, none of which showed that the proffered testimony could not have been presented to the court at the time of the trial, if reasonable diligence had been exercised, and the excuse given by the defendant for the failure

7. See 20 Cal. Jur. 69, 73.

to present such testimony was that he was not advised of the fact that the kind and character of the testimony mentioned in the affidavits was admissible until the trial of the action had taken place.

[8] Id.—Admissibility of Testimony—Knowledge—New Trial.— Lack of knowledge or information as to the admissibility of testimony and failure to present the same upon the trial of an action constitutes no ground for the granting of a new trial.

---

(1) 38 Cyc., p. 1970, n. 3.   (2) 40 Cyc., p. 2849, n. 24.   (3) 4 C. J., p. 883, n. 33; 13 C. J., p. 782, n. 49.   (4) 31 Cyc., p. 444, n. 28.   (5) 13 C. J., p. 585, n. 7.   (6) 13 C. J., p. 648, n. 37. (7) 29 Cyc., p. 870, n. 2.   (8) 29 Cyc., p. 870, n. 2.

APPEAL from a judgment of the Superior Court of Mendocino County. H. L. Preston, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Wessels for Appellant.

M. H. Iverson for Respondents.

PLUMMER, J.—Action by plaintiffs for services performed in the drying of apples belonging to the defendant under an oral agreement. Plaintiffs had judgment and the defendant appeals.

It appears from the transcript that defendant is the owner of an apple orchard situated in the county of Mendocino, state of California; that during the year 1922 he entered into an oral agreement with the plaintiffs for the drying of the apple crop then growing and being upon the orchard belonging to the defendant. The complaint in the action contains the following allegations: "1. That within two years last past defendant employed plaintiffs to dry his 1922 crop of apples at the agreed price of $50.00 per ton, and that said defendant agreed to pay said plaintiffs for said services when the last of said apple crop was shipped to market. . . . 2. That in accordance with said agreement, plaintiffs entered the employ of said defendant, and dried 33,287 pounds of apples at an agreed compensation of the sum of $832.15. That the said apples were all shipped to market on or before January 11, 1923, that the said defendant has

not paid the plaintiffs the sum of $832.15," etc. The plaintiffs had judgment for the amount sued for.

While a large number of assignments of error are presented by the appellant, only two need to be discussed herein, to wit: 1. That the action was prematurely brought; 2. That the findings of the court are not supported by the testimony.

It appears from the transcript that the plaintiffs, prior to performing any services for the defendant, had a conversation with him as to the agreed price to be paid, and also as to when payment therefor should be made. After the conclusion of the taking of testimony the court permitted an amendment to the complaint, substituting the word "Cloverdale" for the word "market." This amendment was permitted in view of the fact that the testimony in some instances showed that Cloverdale was the contemplated market of the parties when negotiating as to the time when payments should be made for the services to be performed by the plaintiffs for the defendant, the testimony clearly showing that all of the apples had been shipped to Cloverdale a considerable period before the institution of suit. The evidence was also to the effect that offers for the apples were made by prospective buyers while the same were at Cloverdale, and that the final sale was made of the apples at such place. The evidence further shows that prior to the delivery of the apples at Cloverdale the defendant was offered a considerable sum in excess of that at which the apples were finally sold. The defense to the action was that the apples were not properly handled, that the work was not performed in a skillful and workmanlike manner by the plaintiffs, and that the defendant had been damaged in a considerable sum of money, by reason of the failure of the plaintiffs to perform their work in a skillful and workmanlike manner, and that the apples dried by them were not merchantable, and were necessarily sold at a very low price. It also appears by the testimony of some of the witnesses that after the defendant had been offered nine cents a pound for the apples, there was a very sharp decline in the price; that the price at Cloverdale dropped from nine cents to about five cents a pound; that the defendant finally sold his apples, or

at least sixteen tons thereof, at the rate of three cents a pound. Upon the conclusion of the introduction of testimony the court made and entered its findings, in substance, as follows, to wit: That the plaintiffs and the defendant entered into the agreement hereinbefore set forth on or about the fourth day of September, 1922; that the plaintiffs dried the quantity of apples herein set forth; that the defendant agreed to pay plaintiffs for said services when said apples were hauled from the premises then owned by the defendant; that said apples were hauled from the premises on or about the eleventh day of January, 1923; that there was no agreement that plaintiffs should or would thoroughly and properly or thoroughly or properly, handle, dry, and cure, or handle, or dry, or cure in a merchantable and marketable condition, or merchantable or marketable condition, free from peelings, cores, defective fruit, etc., any, or all of said crop of apples; that the plaintiffs did not fail nor neglect to thoroughly and properly, or thoroughly or properly, dry and cure said apples in a merchantable and marketable condition; that the plaintiffs did thoroughly and properly handle, dry, and cure the said apples in a merchantable and marketable condition, and that said apples were thoroughly and properly handled, dried, and cured by said plaintiffs in a merchantable and marketable condition; that the defendant had not suffered any damages by reason of any handling and drying of the apples referred to by the said plaintiffs; that the apples were dried by the plaintiffs under the direction and personal superintendence of the defendant to his satisfaction, etc.

[1] It is urgently insisted by the appellant that these findings are not supported by the evidence and, also, that the plaintiffs covenanted and agreed to perform all the work referred to in a skillful and workmanlike manner, etc. As to these findings, we may state that, irrespective of the agreement, the defendant is not injured thereby, for the reason that the court thereafter found that the work was all done in a skillful and workmanlike manner, and that the apples were dried and placed in a merchantable condition. In other words, that the work was properly done notwithstanding there was no agreement relating to the same. [2] The testimony set out in the transcript is amply sufficient to

justify the trial court in coming to the conclusion that the
work was done under the personal supervision of the defend-
ant in this case. It shows that the defendant was present
every day upon the premises, that he delivered the apples to
the dryer operated by the plaintiffs, that he was there a
large number of times, gave directions as to having the
apples quartered, instead of sliced or leafed, and generally
saw and knew what was being done during the entire period
covered by the process of drying the apples, that all the
machinery being operated belonged to the defendant and was
furnished by him, that some conversation took place between
the plaintiffs and the defendant prior to the consummation
of the agreement in which the plaintiffs stated to the de-
fendant that they had had no experience in drying quartered
apples, but had such experience in drying of leafed or sliced
apples, and that the defendant stated, in substance, that
this was immaterial, as he would be present and could look
over what they were doing. This is in accordance with the
version of the agreement and of what took place between the
parties at the time it was entered into between the plaintiffs
and the defendant as given by the plaintiffs. It differs
quite materially from the version of the agreement as testi-
fied to by the defendant. [3] However, as the contract
was oral, it was for the trial court to determine the nature
and the context of the agreement, and, if there is any testi-
mony in the transcript supporting the findings of the court,
such findings are conclusive herein. That such testimony
does appear is clearly evidenced by the testimony given
by the two plaintiffs. One of the plaintiffs testified that the
defendant said: "I want you to dry the apples according
to my way of drying"; that the defendant was present a
number of times every day; that the defendant never ob-
jected to any of the work and showed the plaintiff several
times as to how to perform different parts of the same.
Outside of the testimony of the plaintiffs, there is also testi-
mony by the witnesses Clow, Ward, and Burke that the
apples were dried in a workmanlike and merchantable con-
dition, and were up to the average run of dried apples, es-
pecially when dried as quartered dried apples. In contra-
diction to the evidence introduced by the plaintiffs as to the

quality of the work performed by them, the defendant introduced considerable testimony, including that of himself, that the work was not performed by the plaintiffs in a proper manner, and that the apples were not merchantable. Here, again, we are met by the rule governing courts of appeal in such instances. Where there is a conflict of evidence, it is for the trial court to determine the truth of the matter. All the court of appeal can do is to look into the record and find whether there is or is not any substantial testimony supporting the findings of the trial court. If believed by the trial court, there is ample testimony in the transcript to support the findings hereinbefore set forth, notwithstanding the fact that, if the findings had been to the contrary, such findings would also have found support from the testimony set out in the record. [4] We do not find anything of merit in appellant's objection to the order of the trial court in permitting an amendment to the complaint at the conclusion of the taking of the testimony. If the trial court accepted the version of the plaintiffs as to the time of payment, it is clear that the parties had in contemplation the delivery of the apples at the town of Cloverdale.

[5] The rule seems to be pretty well settled that where compensation for services is to be made upon the sale of any article upon which the services have been performed that it is the duty of the other party to use reasonable diligence in making sale or finding a market. (*Williston* v. *Perkins,* 51 Cal. 554; *Earle* v. *Sunnyside Land Co.,* 150 Cal. 214 [88 Pac. 920]; *Campbell* v. *Kennedy,* 177 Cal. 430 [170 Pac. 1107].)

[6] There is testimony in the record to the effect that the defendant declined offers for the apples at a considerable time prior to their actual sale. Refusal on the part of the defendant to accept an offer at the market price for his apples would authorize an immediate institution of suit by the plaintiffs to recover compensation for their services. Under such circumstances deliberate refusal to make sale constitutes a breach of the agreement. (*Spangenberg* v. *Spangenberg,* 19 Cal. App. 439 [126 Pac. 379].)

[7] A motion for a new trial herein was supported by a number of affidavits, but none of the affidavits show that the proffered testimony could not have been presented to the

court at the time of the trial, if reasonable diligence had been exercised. The excuse given by the defendant for the failure to present such testimony is that he was not advised of the fact that the kind and character of the testimony mentioned in the affidavits was admissible, until the trial of the action had taken place. [8] Lack of knowledge or information as to the admissibility of testimony and failure to present the same upon the trial of an action constitutes no ground for the granting of a new trial. While we have carefully examined, it would serve no useful purpose to discuss the half hundred assignments of error, because they are all reducible to the real important question in this case. Are the findings supported by the testimony? The testimony to which we have referred is amply sufficient to warrant the findings made and entered by the trial court, and there are no errors at law materially affecting any rights of the defendant herein. The judgment and order of the trial court are hereby affirmed.

Hart, J., and Finch, P. J., concurred.