[Civ. No. 6883. First Appellate District, Division One.—April 16, 1930.]

## G. L. RICHARDS, Respondent, v. J. G. TAVARES, Appellant.

Herman A. Bachrack and Brownstone & Goodman for Appellant.

Clark & Heafey for Respondent.

THE COURT.—This is an appeal by the defendant from a judgment rendered against him on two promissory notes, one for $5,000 and the other for $1,000. The notes were executed to the Latham Square Corporation and by it assigned to the plaintiff. Defendant alleged that the notes were conditional obligations payable only in the event that certain units of the stock of the corporation were sold by him, which was not done. The same contention is made on appeal, and, further, that the trial court erroneously permitted the plaintiff to amend his complaint to conform to the proof.

The facts are as follows: The commissioner of corporations on June 19, 1925, granted the corporation a permit to sell and issue 6,000 shares of its preferred capital stock and 6,000 shares of its common stock in units of one share of preferred and one share of common stock for the price of $120 per unit. On August 20, 1925, the corporation entered into an agreement with defendant by which he was appointed its sole and exclusive agent for the sale of the units mentioned, it being provided therein "that all expenses in connection with the sale of said stock, including advertising and circularization as well as salaries or commissions to the salesmen, are to be paid" by the defendant. It was also provided that the agreement should continue in force to and including March 1, 1926, the defendant agreeing to sell on or before that date 3,000 units, in which event the contract was to remain in force for six months thereafter. Between August 20, 1925, and November 20, 1925, the corporation loaned to defendant the sum of $4,000 to assist him in the expense of selling the stock, and on the last-mentioned date the further sum of $1,000 was loaned for the same purpose. On that date the first note for $5,000 was executed by defendant, and at the same time the following memorandum was signed by him and the secretary of the corporation, the George G. Jamieson mentioned therein being its president:

"Memorandum of understanding had between George G. Jamieson, Maury I. Diggs and J. G. Tavares this 20th day of November, 1925.

"Having advanced prior to this date the sum of $5,000.00 to J. G. Tavares in accordance with our previous understanding for expense money for the Latham Square Corporation stock sales matter, it is understood by the parties hereto that when and as J. G. Tavares has sold 2,000 units of the Latham Square Corporation stock, that thirty days thereafter said J. G. Tavares is to repay said $5,000 advanced in the following manner, to wit:

"Commencing thirty days after the sale of the said 2,000 units the sum of $1,000.00 is to be repaid.

"60 days after the sale of said 2,000 units the sum of $2,000 is to be repaid.

"90 days after the sale of said 2,000 units the sum of $2,000 is to be repaid.

"As specified above the total sum of $5,000.00 is to be repaid within 90 days after the sale of said 2,000 units, said moneys to bear no interest.

"It is understood that the above-mentioned $5,000.00 is a sum which has been advanced to J. G. Tavares as a loan to assist him in the expense of the sale of said capital stock and is to be repaid in the manner above outlined.

"M. I. DIGGS<br>"J. G. TAVARES."

The note, by its terms, was payable in accordance with the above memorandum. The defendant not having sold 3,000 units of the stock by March 1, 1926, as required by the original agreement, at a meeting on April 6, 1926, the following letters were written and exchanged between them:

"April 6th, 1926.

"Mr. J. G. Tavares.

"Dear Sir:

"According to the terms of your contract you were to have sold 3,000 units of the capital stock of the Latham Square Corporation by March 1, 1926. To date this has not been accomplished. Please be advised that according to the terms of your contract the contract became null and void on March 1, 1926.

"Any sales that you are able to make in the future we will be pleased to accept, reserving the right, however, to stop the sale of our capital stock at any time hereafter.

"If this is satisfactory please acknowledge the same.

"Yours very truly,<br>"LATHAM SQUARE CORPORATION,<br>"G. L. RICHARDS, Treasurer."

"Oakland, California, April 6th, 1926.

"Latham Square Corporation.

"Gentlemen:

"I acknowledge receipt of your letter of April 6th, 1926, informing me that I have not sold 3,000 units of the capital stock of the Latham Square Corporation by March 1, 1926, in accordance with the terms of our contract, and that therefore said contract has expired.

"I will be pleased to proceed with the sale of said units of capital stock, and hereby give you the right to stop the sale of same at any time.

"It is understood that you are to advance moneys to be used for expenses in the sale of said units of stock, and that same will be repaid by me out of commissions accruing on sales of said units, but should you terminate the sale of said units at any time then said loans up to a limit of $3,000 will be considered to have been satisfied and liquidated.

"Yours very truly,

"J. G. TAVARES."

"April 6th, 1926.

"Mr. J. G. Tavares.

"Dear Sir:

"In consideration of advancing you a loan of $1,000 this day, for which we have taken your note payable in 90 days, please be advised that this loan is made with the expressed condition that the money so advanced to you is to be used only for expenses pertinent to the sale of the capital stock of the Latham Square Corporation.

"You agree to submit to us vouchers showing that the money has been spent for this particular purpose and no other.

"Yours very truly,

"LATHAM SQUARE CORPORATION,

"G. L. RICHARDS, Treasurer."

Simultaneously with the exchange of these letters and as part of the same transaction a further loan of $1,000 was made to the defendant, and the note sued upon was executed by him. This note was dated April 6, 1926, and made payable ninety days after its date. Thereafter the defendant continued to sell stock, and on October 5, 1926, received the following letter from the corporation:

"October 5, 1926.

"J. G. Tavares.

"Dear Sir:

"Please be advised from this date on we will not accept stock subscriptions from any one other than the sales made by salesmen who are operating under a corporate permit and directly in the employment of the Latham Square Cor-

poration Securities Department and working from this headquarters.

"Yours truly,
"LATHAM SQUARE CORPORATION,
"M. I. DIGGS, Secretary."

His reply was as follows:

"October 9, 1926.

"Latham Square Corporation,
"Attention M. I. Diggs, Secretary.

"Gentlemen:

"This is to acknowledge receipt of your letter of October 5th as well as to confirm my conversation with your Mr. Diggs of yesterday with respect to said letter. I would have replied to this letter sooner but it arrived at my office while I was out of town, and immediately on my return I endeavored to locate Mr. Diggs on the telephone and only succeeded in doing so yesterday.

"My understanding with Mr. Diggs is that I am not to solicit any new sales of the capital stock of your company, but that I may however complete such sales which were solicited by me prior to the receipt of your said letter of October 5th, and that you will accept the same and pay me my regular commission therefor. I have spent a great deal of time and effort in such prospective sales which I now have pending, and I expect you to allow me up to and including the 15th of October in which to complete the same. In other words, after October 15th, 1926, our existing arrangement is to be entirely terminated.

"Please confirm this understanding to me.

"Very truly yours,
"J. G. TAVARES."

To the latter communication the corporation made no reply, but accepted sales of stock from the defendant to and including October 15, 1926, and the present action was filed on December 30, 1926.

The memorandum of November 20, 1925, referred to the completion of the sale of 2,000 units of the stock as the date after which the $5,000 first advanced to defendant should be repaid in installments as therein provided, and the complaint alleged that to and including July 1, 1926, more than that number of units had been sold by the defendant. It was shown at the trial, however, that the total

number of units sold by him from August 20, 1925, to October 15, 1926, was 1747, for which he received commissions amounting to $34,940, the commissions received from sales made after April 6, 1926, being the sum of $13,040.

It appears that the taking of testimony in the case was concluded on October 27, 1927, and that thereafter on February 3, 1928, the court, without notice to the defendant, granted the plaintiff leave to amend his complaint to conform to the proofs by striking out the allegation last mentioned and inserting the following in lieu thereof: ''That said defendant has failed, neglected and refused to sell 2,000 units of the capital stock of said Latham Square Corporation; that said defendant has had a reasonable time within which to sell 2,000 units of the capital stock of said corporation, and that said reasonable time expired March 1, 1926.'' The order further provided that the allegations of the amendment were deemed denied. The amendment was filed on February 3, 1928, and on the same date a copy thereof, together with a copy of the proposed findings, was noticed for presentation to the court on February 9, 1928, and was signed and filed on February 28, 1928.

That under the contract of August 20, 1925, all expenses in connection with the sale of the stock were to be paid by the defendant, and that the amount evidenced by the promissory note for $5,000 was advanced as a loan to assist him in making such sales is undisputed. He contends, however, that his obligation to repay this sum was modified by the memorandum of November 20, 1925, and thereafter depended upon the condition that at least 2,000 units of the stock be sold by him.

The original contract was to remain in force until March 1, 1926, within which time defendant agreed to sell 3,000 units. The memorandum of November 20, 1925, indicates no intention to extend the contract, and that such was not its purpose is shown by the letters of April 26, 1926, wherein defendant was notified that his contract had expired, to which he assented, stating that he would be pleased to proceed with the sale of stock, the corporation to have the right to stop such sales at any time. That the parties at the time the memorandum was executed contemplated a sale of at least 2,000 units before the expiration of the original contract may fairly be inferred from the

above, and supports the finding of the trial court that a reasonable time within which to dispose of this amount of stock expired on that date. It further appears, however, that following his request defendant continued to sell until October 15, 1926, on which date he had disposed of but 1747 units; and that on October 9, 1926, in response to the company's letter of October 5, 1926, he stated that, according to his understanding with the secretary of the company, " . . . after October 15, 1926, our existing arrangement is to be entirely terminated." Whether the defendant failed to dispose of the 2,000 units within a reasonable time, or within the period contemplated by the parties, or the agreement was terminated by mutual consent before that number had been sold, is not material to the right of the plaintiff to recover. █ Contrary to defendant's claim, the advances were not gifts, but loans; and when the defendant failed to perform as found, or the contractual relation between the parties was terminated by agreement, as shown by defendant's letter, these amounts became due and payable (*Williston* v. *Perkins,* 51 Cal. 554; *Rosenheim* v. *Howze,* 179 Cal. 309 [176 Pac. 456]; *Looney* v. *Scott,* 71 Cal. App. 308 [235 Pac. 76]; *Green* v. *Darling,* 73 Cal. App. 700 [239 Pac. 70]; *Dugan* v. *Phillips,* 77 Cal. App. 268 [246 Pac. 566]; *Noland* v. *Bull,* 24 Or. 479 [33 Pac. 983]). While it is the general rule that where a note is payable on the happening of a contingency, the payee, in order to recover, must show that such contingency has happened (*Sanders* v. *Whitesides,* 10 Cal. 88; *McLaughlin* v. *Clausen,* 85 Cal. 322 [24 Pac. 636]), as the court said in *Hogan* v. *Globe Mutual etc. Assn.,* 140 Cal. 610 [74 Pac. 153], quoting with approval from *DeWolf* v. *French,* 51 Me. 420: "If the debt is understood to be absolute, and the happening of the future event is fixed upon as a convenient time for payment merely, and for some unforeseen or unthought-of cause the event never happens, the creditor's right to recover will not be defeated; the law will require the payment to be made within a reasonable time after it is ascertained the event will not happen. The debt will be contingent or otherwise, depending upon the intention of the parties."

The above is peculiarly applicable to the facts of the present case. That the obligation to repay the advances was

absolute at the time the same were made admits of no reasonable doubt; and the implied conclusion of the trial court that the event subsequently fixed upon for payment was merely for the convenience of the defendant is fully supported by the evidence. The note for $1,000 was executed on April 6, 1926, and was payable ninety days after its date. ▉ As appears from the letters of the same date this sum the defendant agreed to use exclusively for expenses in connection with the sale of the stock, and to furnish vouchers showing that it had been used for no other purpose; but the evidence shows and the court found that the defendant failed to use any part of it for that purpose. While the parties further agreed that should defendant's authority to sell the stock be terminated the above, with any future advances made by the corporation up to $3,000, should be considered to have been satisfied, nevertheless, having failed to use the money for the agreed purpose, the breach resulted in a failure of consideration for the loan and gave the plaintiff the right to recover the amount advanced (Civ. Code, sec. 1689, subd. 2; *McDonald* v. *Pacific Debenture Co.,* 146 Cal. 667 [80 Pac. 1090]; *Morlock* v. *Fink,* 81 Cal. App. 686 [254 Pac. 578]).

▉ The allowance of amendments to conform to the proofs rests in the discretion of the trial court. (*Hancock* v. *Board of Education,* 140 Cal. 554 [74 Pac. 44]). Such amendments may be allowed after the submission of the cause (*Lee* v. *Murphy,* 119 Cal. 364 [51 Pac. 549, 955]; *Hancock* v. *Board of Education, supra; Myers* v. *Holton,* 9 Cal. App. 114 [98 Pac. 197]), and are deemed denied (*Bank of Italy* v. *Johnson,* 200 Cal. 1 [251 Pac. 784]).

▉ In the case at bar a copy of the amendment was served on the day the same was filed, and on February 9, 1928, the order for judgment was entered. The findings and judgment, however, were not filed until February 28, 1928. No request that the cause be reopened for the purpose of permitting the defendant to produce further evidence on the question presented by the amendment was made in the meantime, and it is not contended that all the facts relevant to the issue were not adduced at the trial. ▉ Before it can be held that the allowance of such an amendment was an abuse of discretion it must be shown that the adverse party has been prejudiced thereby (*McClure* v. *Alberti,* 190 Cal.

348 [212 Pac. 204]), and no reasonable ground for this conclusion appears in the present case. No judgment can be set aside for error in any matter of procedure unless after an examination of the entire record the court shall be of the opinion that the error complained of resulted in a miscarriage of justice (Const., art. VI, sec. 4½). The record shows that the findings of the trial court were fully supported by the evidence, and no error appears which in our opinion would warrant a reversal of the judgment or justify the conclusion that the result was a miscarriage of justice.

The judgment is affirmed.