[Civ. No. 9501.    Third Dist.    Feb. 10, 1959.]

MERCANTILE ACCEPTANCE CORPORATION OF CALIFORNIA (a Corporation), Respondent, v. LILES BROTHERS MOTOR COMPANY, INC. (a Corporation), Appellant.

Albert L. Wagner for Appellant.

Oscar A. Kistle for Respondent.

SCHOTTKY, J.—Plaintiff above-named filed an action for declaratory relief and to compel defendant Liles Brothers Motor Company, Inc. to endorse the certificates of ownership of certain automobiles and to deliver said certificates to plaintiff. Defendant Liles Brothers filed a cross-complaint seeking to quiet title to said automobiles. After a trial the court determined that Liles Brothers was estopped to assert its interest in said automobiles and found generally in accordance with the allegations of the complaint. Judgment was entered as prayed for, and Liles Brothers has appealed from said judgment.

Appellant's sole contention is that the findings are not supported by the evidence. Before discussing this contention, we shall give a brief summary of the evidence as shown by the record.

Liles Brothers operates a wholesale used-car lot in Memphis, Tennessee. In 1955, Barney Liles, an officer of Liles Brothers, met Lloyd A. Warn who was an official of Sacto Auto Wholesalers, Inc., hereinafter referred to as Sacto. Thereafter, during the year 1955 and the early part of 1956, Liles Brothers sold some 15 automobiles to Sacto. In December, 1955, Warn purchased some 10 automobiles from Liles Brothers in Memphis. Liles Brothers procured drivers to

deliver the automobiles to Sacto at its lot in Sacramento. If at the time the cars left Tennessee, or shortly thereafter, Liles did not have the certificate of title, Liles Brothers sent the certificate of title with bills of sale and invoices with a sight draft to a bank in Sacramento with instructions that the documents be delivered upon payment of the draft. Barney Liles testified, however, that when the cars left the lot they belonged to the purchaser.

Sacto conducted a retail and wholesale automobile sales business in Sacramento. Mercantile Acceptance Corporation discounted conditional sales contracts and floored new and used automobiles for Sacto. The relationship between the two concerns had been satisfactory until January, 1956.

Of the 10 cars sold by Liles Brothers to Sacto five were sold by Sacto to various purchasers. Four of the purchasers executed conditional sales contracts. In the fifth instance, the purchaser agreed to pay the balance due on the automobile he purchased at the rate of $91.52 per month. These contracts were assigned to Mercantile. In four instances Sacto received the amount due them, and in the fifth case three existing debts of Sacto to Mercantile were cancelled. Mercantile did not receive any certificate of title to any of the cars at the time it discounted the contracts. The practice in the trade is to accept an assignment of a conditional sales contract without examining evidence of title. Mercantile did not have actual knowledge that Sacto did not have title to the automobiles. Other facts appearing in the record will be set forth in the course of this opinion.

There were five causes of action, similar in nature, and each relating to a different automobile. There were similar findings as to each of the causes of action. As to each cause of action, the court concluded that respondent was entitled to judgment declaring it to be the legal owner of the automobile involved, subject to the rights of the purchaser, and that appellant was estopped from asserting any right or title to said automobile and should be ordered to endorse and deliver to respondent the certificate of ownership of said automobile.

Appellant attacks the following finding as being without support in the evidence:

"[A]nd it is true that, at the time of said sale and said delivery, the defendant and cross-complainant Liles Brothers Motor Co. Inc. was informed that said automobile was being purchased by said defendants Sacto Auto Wholesalers Inc.,

Fred C. Parks, Lloyd A. Warn, and Mrs. Lloyd A. Warn for display and resale on premises of said defendants at 1958 Fulton Avenue, Sacramento, Sacramento County, California. That it is not true that it was agreed and understood that draft drawn by Liles Brothers Motor Co. Inc. upon Sacto Auto Wholesalers Inc. in connection with said sale and delivery was to be paid forthwith; that it is true that it was agreed that said draft was to be paid in the City of Sacramento, State of California, upon presentation or when said automobile was sold at the discretion of said Sacto Auto Wholesalers Inc., Fred C. Parks, Lloyd A. Warn and Mrs. Lloyd A. Warn'';

Appellant admits that it knew that Sacto was a used-car dealer and intended to sell the cars bought from appellant, but appellant denies that there was any evidence that appellant knew the cars were ''being purchased . . . for display and resale on premises of said defendants at 1958 Fulton Avenue, Sacramento, Sacramento County, California.'' Appellant contends also that the only evidence given as to when the draft was to be paid was by appellant to the effect that the draft was to be paid forthwith upon presentation and that no evidence was adduced that there was to be any delay in payment. Appellant contends further that the record discloses no testimony or evidence that the draft was to be paid when the automobile was sold and no evidence that the discretion of the buyers was to be exercised concerning time of payment of the draft. He asserts that the testimony of Barney Liles is directly to the contrary and stands uncontradicted.

Appellant concedes that the general rule is that an owner of property who clothes another with apparent title is estopped from thereafter asserting his title against an innocent third party who has dealt with the apparent owner in reference to such property, but appellant contends that respondent was not an innocent purchaser from an apparent owner and that respondent did not rely upon the fact that the automobiles were placed upon the lot of the used-car dealer. Appellant asserts that respondent relied upon the used-car dealers and not upon the fact that the automobiles were upon the used-car lot of Sacto. Appellant then contends that the evidence does not support the findings or the conclusion of the court that appellant is estopped from asserting title to said automobiles.

There would be much merit in these contentions of appellant if the only construction that could be placed on the evidence was the one placed upon it by appellant. But unfor-

tunately for appellant the evidence was conflicting, and we must view the evidence in the light most favorable to respondent and must draw every inference in its favor which can reasonably be drawn from the evidence.

The automobiles here involved were sold by appellant Liles Brothers to Sacto in Memphis. Appellant knew they were purchased for resale to the general public on the used-car lot of Sacto. Appellant selected drivers who were to deliver the automobiles to the used-car lot of Sacto, and Sacto secured insurance of the automobiles before they left Memphis. At one point in his testimony Barney Liles stated: ''Q. Would you state generally in your own words what your means of operating is when you make these wholesale sales into California respectively? How do you transfer title? A. By draft. For instance I sold a guy five cars over the telephone in California yesterday and they are his cars when they leave here. The minute a car leaves I draw a draft on him and usually the draft beats the car there. I do that the day the car leaves the lot and they are his cars when they leave and he insured or insures them and I have nothing to do with that.''

There were no instructions to the drivers not to deliver the automobiles to Sacto until the drafts were paid; in fact the drivers had no instructions except to deliver them to Sacto at its used-car lot. The drafts and accompanying papers were sent direct to the bank. The record shows that they frequently remained in the bank for several weeks before being paid, and in the meantime some of the cars would be sold to purchasers under conditional sales contracts which were purchased by respondent.

We believe that the following portion of the memorandum opinion of the trial judge is supported by the evidence and the law.

''. . . These automobiles were placed by Liles with Sacto., knowing that they were to be displayed by Sacto. and sold from the lot to the general public. The cars were delivered by a driver selected by Liles in Memphis. The drivers were to deliver the automobiles and no mention was made of any reservations or special instructions regarding the withholding of any such deliveries. Sometimes the necessary papers were forwarded by Liles to the Bank of America in Sacramento and sometimes the papers would arrive later, if Liles did not happen to have them at the time of delivery. The Bank was instructed to deliver the documents upon payment of the

drafts. The drafts in the instant matters were in the Bank for some five or six weeks. The usual conditional sales contracts were made out by the buyers to cover unpaid balances. The plaintiff, Mercantile Acceptance Corporation, is in the business of financing automobile paper and did so in this case. As the contracts were assigned to the plaintiff, in all but one instance, the plaintiff paid Sacto. the unpaid balance to be financed. In the Teal contract, the plaintiff cancelled a pre-existing debt and paid the Motor Vehicle Department certain fees in addition.

"Plaintiff's opening brief sets out the general custom of financing of automobiles and points out that it has been the custom of the trade to accept the assignment of such conditional sales contracts without the certificate of title necessarily being presented at the same time. As will be pointed out in the authorities, this Court does not feel that that is a compelling point.

██ "It is a well settled law of this State that the owner of property who clothes another with the apparent title to it and the power of disposition thereof is estopped from afterward asserting his title against an innocent third party, who has thereby been induced to deal with the apparent owner in reference to such property. (See: *Pacific Finance Corp.* v. *Hendley*, 103 Cal.App. 335 [284 P. 736]; 119 Cal.App. 697 [7 P.2d 391]. See also: *Meadows* v. *Hampton Livestock Com. Co.*, 55 Cal.App.2d 634, 636 [131 P.2d 591].)

██ "Section 3543 of the Civil Code provides: 'Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.'

"This rule applies even though there has been no compliance with section 186 of the California Vehicle Code, since estoppel may even in that type of case still prevail against the seller. (*Wargin* v. *Wargin*, 29 Cal.2d 843, 845 [180 P.2d 349].)

"The titles retained by Liles in this case were for security purposes only and as is pointed out by plaintiff, this can be likened somewhat to the situation where trust receipts are used.

██ "There is no question but in the instant matter, Liles knew that Sacto. was to sell these cars to the general public. That was the business of Sacto. Liles, of course, knew that with the sale of an automobile, financing is generally required. Here financing was done by the plaintiff and Sacto. received full payment for the cars.

"The defendant, Liles, bases its defense upon the theory

that the plaintiff corporation was negligent in dealing with Sacto.; that plaintiff should have known the precarious condition of Sacto. and should have had some foreknowledge of the defalcation of Parks and Warn. The testimony shows that plaintiff had done business with Sacto. for sometime and that up to January, 1956, no problem had arisen. Other matters were brought out concerning the conduct of Parks and Warn, but the Court sees little merit to that evidence.

"Liles places a great deal of emphasis upon the case of *Metropolitan Finance Corp.* v. *Morf*, 42 Cal.App.2d 756 [109 P.2d 969]. This case, however, can be distinguished easily from the case at bar, by reason of the fact that in the Morf case there was a certain reservation that the parties did not intend property in the cars to pass until the approval by Woods (who would be in the same position as Sacto, here) of the mechanical condition of the cars and the delivery of a properly endorsed certificate of ownership. In the instant matter there were no such reservations; the delivery was made with the authority to sell and an understanding that the cars would be sold at the first opportunity."

■ As stated in *Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489, at page 491 [256 P.2d 32]:

". . . 'In general, four things are essential to the application of the doctrine of equitable estoppel: first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury.' (10 Cal.Jur. 627, § 14.) ■ An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. (*Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346, 349 [159 P.2d 24].) ■ Negligence, that is careless and culpable conduct, is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel. (*Parke* v. *Franciscus*, 194 Cal. 284, 297 [228 P. 435].) ■ Where one of two innocent parties must suffer, he who committed the mistake must bear the loss. (*McGee* v. *Stone*, 9 Cal. 600, 607.) ■ The existence of an estoppel is a question of fact. (*Pike* v. *Rhinehart*, 112 Cal.App.2d 530, 533 [246 P.2d 963].)"

■ We are convinced that the evidence supports the findings of the court and that its conclusions of law that appellant

is estopped from asserting any title to said automobiles is supported by the applicable law.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.