[Civ. No. 24556. First Dist., Div. One. Mar. 11, 1969.]

JOHN T. DOMARAD et al., Plaintiffs, Cross-defendants and Appellants, v. FISHER & BURKE, INC., Defendant, Cross-complainant, Cross-defendant and Respondent; SURETY TITLE & GUARANTY COMPANY, Defendant, Cross-complainant and Respondent.

Dimitri K. Ilyin and James W. Funsten for Plaintiffs, Cross-defendants and Appellants.

Sylva, Rubnitz & DiNapoli and David R. Sylva for Defendant, Cross-complainant and Respondent.

Marlais & Hover and John P. Marlais for Defendant, Cross-complainant, Cross-defendant and Respondent.

MOLINARI, P. J.—This is an appeal by plaintiffs from a judgment, the pertinent recitals of which will later appear in this opinion, and from the order denying the motion to set aside the judgment.[1]

[1] An order denying a motion to vacate a judgment made under Code of Civil Procedure section 663 is appealable. (*Socol* v. *King,* 34 Cal.2d 292, 296 [209 P.2d 577]; *Rounds* v. *Dippolito,* 34 Cal.2d 59, 61 [206 P.2d

*Procedural Background*

Plaintiffs, investors with a bankrupt trust deed company, brought this class action against defendants to quiet title to the proceeds of certain promissory notes, for damages for violation of the Corporate Securities Law, and for exemplary damages against conspirators. Defendant Argonaut Mortgage Company[2] (hereinafter referred to as ''Argonaut'') cross-complained asking that Argonaut be adjudged the owner of the proceeds of the notes. Additionally, defendant Surety Title & Guaranty Company (hereinafter referred to as ''Surety'') cross-complained asking only for recovery of escrow and counsel fees. After a trial without a jury, the court entered a judgment which awarded the bulk of the proceeds of the notes to defendant Argonaut and which ratably apportioned the remainder of the proceeds to plaintiffs. In its judgment the court denied damages to plaintiffs for any acts of defendants.[3] Plaintiffs moved for an order to set aside the judgment on the grounds of incorrect and erroneous conclusions of law not consistent with and not supported by the findings of fact. The court denied this motion and a request for a special finding.

*Facts*

Previous to the transaction involved in the instant litigation Argonaut and Guardian Trust Deeds Corporation (here-

---

1083].) Plaintiffs also appeal from the order denying their request for a special finding of fact that they are entitled to $1.00 as attorney's fees made in conjunction with the motion under Code of Civil Procedure section 663. This order is not appealable because it is not a final judgment nor a special order made after judgment. It does not affect the judgment in some manner or bear some relation to it, either by way of enforcing it or staying its execution. (See Code Civ. Proc., § 963; *Lake* v. *Harris,* 198 Cal. 85, 89 [243 P. 417]; *Williams* v. *Superior Court,* 14 Cal.2d 656, 666 [96 P.2d 334].) Moreover, on appeal an appellant is protected from insufficient findings by his objection to findings made and his proposal of counter-findings or a request for a special finding. (Code Civ. Proc., § 634; *ABC Egg Ranch, Inc.* v. *Abdelnour,* 223 Cal.App.2d 12, 16 [35 Cal.Rptr. 487].) Moreover, the request that the trial court determine that plaintiffs were entitled to a nominal attorney fee of $1.00 is a determination of an issue of law upon which no finding is required. In this regard we here note that we are not considering the propriety of any award for attorney fees that the trial court may see fit to make after remittitur for attorney's fees from the common fund recovered or protected.

[2]Argonaut was the predecessor in interest of defendant Fisher & Burke, Inc. Since the company was known as Argonaut at the time of the transactions in question, that name will be used throughout this discussion.

[3]Additionally, in its judgment the court awarded defendant Surety costs of suit as a prevailing defendant and denied costs to plaintiffs and to Argonaut. Surety was denied any relief on its cross-complaint for escrow fees.

inafter referred to as "Guardian") had operated under an unsigned Warehouse and Pledge Agreement under the terms of which Argonaut would deposit money with title companies to be used for Guardian's purchase of notes secured by deeds of trust. The notes and deeds of trust so purchased by Guardian were considered "warehouse inventory" and became the property of Guardian subject to the pledge provision of the agreement. Upon the deposit of such funds particular notes and deeds of trust were purchased by Guardian and held in escrow by the title company until such time as Guardian deposited sufficient funds to repay Argonaut for the acquisition of the particular note and deed of trust. Under the agreement Guardian was to pay Argonaut 7.3 percent interest per annum on the amount provided, and in addition Argonaut was to receive 2 percent of the purchase price received for notes and deeds of trust sold by Guardian.

In the present case D & G Construction Co., Inc.,[4] the developers of a subdivision in the City of Santa Clara, embarked upon the financing for the development by the execution in September 1960 of 301 promissory notes secured by 301 deeds of trust on 301 lots in the subdivision. Although the notes were for varying amounts, they totaled a principal face value of $700,000 and each carried an interest rate of 10 percent per annum. The payee of the notes and beneficiary of the deeds of trust was William H. Elliott, Jr., vice-president of D & G. The trustee of the deeds of trust was Surety and each of the deeds of trust was duly filed for record. As part of the same escrow transaction, Elliott executed assignments of the notes and the deeds of trust to Guardian in consideration of the payment of $525,000, a discount price 25 percent less than the face value of the notes.

In order to finance the transaction between D & G and Guardian, Argonaut deposited $500,000 with Surety subject to the specific instruction that the notes were not to be delivered or released to Guardian without the authorization of Argonaut. On or about October 6, 1960 Surety closed the subject escrow by the disbursement of the said sum of $525,000, pursuant to the instructions of the parties, by the delivery of the deeds of trust to Guardian, and the retention by Surety of the 301 notes.

D & G subsequently paid the sums due on all of the 301 notes. Guardian, however, paid to Argonaut only the sums

---

[4] D & G Construction Co. Inc. was originally a defendant in this action but was dismissed on the payment of $15,000.

represented by 124 of the notes and thereafter went into bankruptcy before retiring its debt to Argonaut. Prior to this litigation 114 of the remaining 177 notes were the subject of discharge by way of compromise or other satisfaction. The proceeds of the remaining 63 notes were paid into escrow and only these proceeds are the subject of the instant case.

Plaintiffs are individual members of the public who deposited money with Guardian pursuant to Guardian's representation that investors would receive 10 percent interest and that the funds of the individual investor were individually secured by a deed of trust recorded in the investor's name. Guardian posted the funds deposited by plaintiff investors on account cards showing a "customer balance" representing the amount of the investor's deposit plus the 10 percent interest thereon, credited monthly. The account card also showed a "work balance" which represented the "customer balance" reduced by the face amount of the deed of trust which Guardian represented had been assigned to the investor. Each investor received a passbook indicating the amount of his deposit, and each investor had the right to withdraw his funds or the accrued interest, or both, at any time.

When a deed of trust was transferred on the books of Guardian to an investor a "service agreement" was entered into between the investor and Guardian, who was therein designated as "Agent." Pursuant to this agreement Guardian purported to sell to the investor, for the price stated, a promissory note secured by the particular deed of trust. The agreement further provided that the investor was the owner of said note and that the original of said note was in the possession of Guardian, as agent, who agreed to collect payments due on the note for the credit of the investor. Following the execution of the service agreement, the investor received a "portfolio" which contained a copy of the note, a copy of the deed of trust, and, if the assignment of the subject deed of trust from Guardian to the investor had been recorded, the original of said recorded assignment. This assignment stated that Guardian assigned all of its right, title and interest in the subject deed of trust "together with the Promissory Note therein mentioned and thereby secured." It should be here noted that the same provision was contained in the original assignment of the particular deed of trust from Elliott to Guardian.

With respect to the 63 deeds of trust in question, 7 of these had been assigned by Guardian to certain of plaintiff

investors by assignments executed and recorded prior to the date Guardian filed bankruptcy proceedings on November 20, 1960; 20 had been assigned by Guardian to certain of plaintiff investors by assignments executed prior to November 20, 1960, but not recorded until after January 1, 1961, when they were placed on record by the Receiver in Bankruptcy; and 36 were assigned to certain of plaintiffs by assignments executed and recorded by the Receiver after the filing of the bankruptcy proceedings.

It should also be here noted that with respect to the subject 301 notes and deeds of trust involved in the D & G financing, the transaction differed from the previous transactions between Guardian and Argonaut. In previous transactions both the notes and the deeds of trust were retained in escrow, each of said notes, and the deed of trust securing it, was not assigned or delivered to Guardian until the funds advanced by Argonaut for its acquisition were repaid. In the instant transaction the deeds of trust were delivered into the possession of Guardian and the assignments of the deeds of trust were recorded and delivered to Guardian; only the notes were retained in escrow until repayment was made.

Other facts will later appear where pertinent to the discussion.

### Plaintiffs' Claim

Plaintiffs claim, essentially, that they are entitled to the proceeds of the subject 63 notes because they purchased the notes from Guardian without knowledge or notice of any claims or interest of Argonaut.

### Findings, Conclusions and Judgment

The trial court found, essentially, as follows: that a pledge agreement existed between Argonaut and Guardian pursuant to which all the 301 notes and deeds of trust were deposited with Surety as pledge-holder to secure the repayment of the $500,000 loan made by Argonaut to Guardian; that at the close of the escrow involving the D & G transaction Argonaut authorized Surety to record the assignments of said deeds of trust and to deliver to Guardian the original deeds of trust and the original of such assignments; that the said notes were never delivered to Guardian but were at all times in the possession of Surety under the terms of the aforesaid pledge agreement; that Argonaut assumed that Guardian planned to sell the 301 notes and deeds of trust to members of the public; that plaintiffs invested with Guardian in reliance on represen-

tations of Guardian that they would receive interest at the rate of 10 percent per annum on the amount of money paid to Guardian, credited monthly, and that such funds would be repaid to plaintiffs on demand; that neither Argonaut nor Guardian gave notice to any of the plaintiffs that the said notes were being retained by Surety as security for the payment of the sums due from Guardian to Argonaut under the pledge agreement; that at the time plaintiffs made payments to Guardian, the latter did not have possession of the notes and did not intend to transfer any interests in the notes to plaintiffs until such time as Argonaut had been paid by Guardian; and that any loss sustained by plaintiffs was due solely to the misappropriation of funds by Guardian.

As a result of these findings and other findings, some of which will be mentioned in the discussion that follows, the trial court concluded that the pledge agreement was valid, that the deposit of the notes and deeds of trust was made as security for the $500,000 loan made by Argonaut to Guardian; that the interests of the plaintiffs in the notes, the proceeds thereof, and the deeds of trust were junior and subordinate to the lien of Argonaut; that Argonaut was entitled to $121,520 of the deposited proceeds; that this amount, when added to the payments made by Guardian and the aforementioned compromise payments, results in the return of exactly $500,000 to Argonaut; that Argonaut was entitled to $20,480.10 in adjusted interest; and that plaintiffs were entitled to the balance of the proceeds in the amount of $37,717.62. Judgment was thereupon entered that Argonaut was entitled to receive $142,008.10 of the subject proceeds and plaintiffs were entitled to receive $37,717.62 of said proceeds.

### Equitable Estoppel

In contending that Argonaut is barred from claiming the proceeds of the pledged notes by the doctrine of equitable estoppel, plaintiffs particularly rely on the theory of ostensible ownership which estops an owner of property who clothes another with apparent title from later asserting his title against an innocent third party who has been induced to deal with the apparent owner. (Citing to this effect *Meadows* v. *Hampton Live Stock Com. Co.*, 55 Cal.App.2d 634 [131 P.2d 591]; *Mercantile Accept. Corp.* v. *Liles Bros. Motor Co.*, 167 Cal.App.2d 779 [334 P.2d 983]; and *McKee* v. *Peterson*, 214 Cal.App.2d 515 [29 Cal.Rptr. 742].) This argument is based essentially on the fact, as found by the court, ''that Argonaut

assumed that Guardian planned to sell the 301 notes and deeds of trust to members of the public.'' Argonaut asserts that the theory of ostensible ownership cannot apply because the notes were not in the possession of Guardian and, therefore, were not assigned and delivered to plaintiffs. Thus, they contend, plaintiffs did not take title from an apparent owner. Moreover, they assert that all of the essential elements of an estoppel were not proved at trial.

Before proceeding to discuss the merits of the respective contentions it is expedient that we review certain principles applicable to deeds of trust. ■ Initially, we note that in California there is little practical difference between mortgages and deeds of trust, that they perform the same basic function, and that a deed of trust is ''practically and substantially only a mortgage with power of sale.'' (*MacLeod* v. *Moran,* 153 Cal. 97, 99-100 [94 P. 604]; *Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644, 657 [20 P.2d 940]; *Hamel* v. *Gootkin,* 202 Cal.App.2d 27, 29-30 [20 Cal.Rptr. 372]; see Land Security and Development (Cont. Ed. Bar) Part 1, §§ 1.1 and 1.2.) ■ Next we note that although ''there are no statutory provisions dictating the form or stating the effect of deeds of trust'' (Cont. Ed. Bar, *supra,* § 1.6), deeds of trust are analogized to mortgages and the same rules are generally applied to deeds of trust that are applied to mortgages. (See Civ. Code, §§ 2920-2953, particularly § 2924; *Bank of Italy etc. Assn.* v. *Bentley, supra,* at pp. 655-657; *Sacramento Bank* v. *Alcorn,* 121 Cal. 379, 383-384 [53 P. 813]; *Hamel* v. *Gootkin, supra.*)

■ Consonant with the foregoing, we note the following established principles: that a deed of trust is a mere incident of the debt it secures and that an assignment of the debt ''carries with it the security.'' (Civ. Code, § 2936; *Cockerell* v. *Title Ins. & Trust Co.,* 42 Cal.2d 284, 291 [267 P.2d 16]; *Lewis* v. *Booth,* 3 Cal.2d 345, 349 [44 P.2d 560]; *Union Supply Co.* v. *Morris,* 220 Cal. 331, 338-339 [30 P.2d 394]; *Savings & Loan Soc.* v. *McKoon,* 120 Cal 177, 179 [52 P. 305]; *Hyde* v. *Mangan,* 88 Cal. 319, 327 [26 P. 180]); that a deed of trust is inseparable from the debt and always abides with the debt, and it has no market or ascertainable value, apart from the obligation it secures (*Buck* v. *Superior Court,* 232 Cal. App.2d 153. 158 [42 Cal.Rptr. 527, 11 A.L.R.3d 1064]; *Nagle* v. *Macy,* 9 Cal. 426, 428; *Hyde* v. *Mangan, supra*; *Polhemus* v. *Trainer,* 30 Cal. 685, 688); and that a deed of trust has no assignable quality independent of the debt, it may not be

assigned or transferred apart from the debt, and an attempt to assign the deed of trust without a transfer of the debt is without effect. (*Adler* v. *Sargent*, 109 Cal. 42, 48 [41 P. 799]; *Polhemus* v. *Trainer, supra; Hyde* v. *Mangan, supra; Johnson* v. *Razy*, 181 Cal. 342, 344 [184 P. 657]; *Kelley* v. *Upshaw*, 39 Cal.2d 179, 191-192 [246 P.2d 23].)[5]

Adverting to the instant case in the light of the foregoing principles, we note that the original promissory notes and the deeds of trust securing them were assigned by Elliott to Guardian. By virtue of these assignments Guardian became the owner of both the debt and the security. However, since the notes were the subject of the pledge agreement between Guardian and Argonaut, they were not delivered to Guardian but were retained in escrow. We note, however, that Argonaut caused to be delivered to Guardian both the original deeds of trust and the assignment from Elliott to Guardian, and that it permitted the assignments to be recorded. ▆ Each of these assignments was entitled "Assignment of Indebtedness Secured by Deed of Trust." This form of assignment not only provided that Elliott was assigning his right, title and interest in the deed of trust but also that he was assigning the deed of trust *"together with the Promissory Note therein mentioned and thereby secured."* (Italics added.) Such a form of assignment operates as an assignment of both the note and the deed of trust. (See *Seidell* v. *Tuxedo Land Co.*, 216 Cal. 165, 170 [13 P.2d 686]; and see Land Security and Development (Cont. Ed. Bar) Part 2, § 6.28 and comment to said section.) ▆ Moreover, since the assignment was recorded in compliance with Civil Code section 2934, it operated under the provisions of this section as constructive notice of its contents to third persons. (*Warnock* v. *Harlow*, 96 Cal. 298, 306 [31 P. 166, 31 Am.St.Rep. 209]; *City of Los Angeles* v. *Morgan*, 105 Cal.App.2d 726, 733 [234 P.2d 319].) ▆ The purpose of the recording statutes is to give notice to prospective purchasers or mortgagees of land of all existing and outstanding estates, titles or interest, whether valid or invalid, that may affect their rights as bona fide purchasers. (*City of Los Angeles* v. *Morgan, supra.*) Here the effect of the recordation of the assignment from Elliott to Guardian was to impart notice that Guardian was the owner and holder of the note and deed of trust securing it without restriction or reservation since the assignment did not mention that the ownership of the notes was subject to a lien by way of pledge in favor of

---

[5]See also 59 C.J.S., Mortgages, section 359 and cases there cited.

Argonaut. This state of affairs was permitted to exist by Argonaut when it released the deeds of trust and the Elliott assignments from escrow, and continued to exist when Guardian thereafter purported to sell the subject notes and deeds of trust to plaintiffs and when Guardian executed assignments of 27 of these notes and deeds of trust to certain of plaintiffs. Accordingly, Argonaut permitted the apparent title to the notes to be in Guardian notwithstanding the fact that the notes were never delivered to Guardian. Under the circumstances, plaintiffs were entitled to the benefits of the recording statute since, as we shall hereinafter point out, they did not have actual notice of Argonaut's lien under the pledge agreement nor were they in possession of facts which would lead a reasonably prudent person to obtain actual notice of said lien. (See *Chapman* v. *Ostergard,* 73 Cal.App. 539, 545-546 [238 P. 1081]; *Dreifus* v. *Marx,* 40 Cal.App.2d 461, 467-468 [104 P.2d 1080]; *Ocean Shore R.R. Co.* v. *Spring Valley Water Co.,* 218 Cal. 86, 88 [21 P.2d 588].)

Adverting to the doctrine of estoppel, we note that its application requires the establishment of four elements, to wit: "(1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773, 778 [8 Cal.Rptr. 448, 356 P.2d 192].) In *Crestline,* it is stated, moreover, that "Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel." (Pp. 778-779; see also *Mercantile Accept. Corp.* v. *Liles Bros. Motor Co., supra,* 167 Cal.App.2d 779, 785.)

In the instant case plaintiffs pleaded all the essential facts to establish an estoppel and the issue was before the trial court under the pleadings and pursuant to the pretrial conference order. "[T]he existence of an estoppel is generally a question of fact for the trier of fact, and ordinarily the trial court's determination is binding on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts." (*Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129]; see also *Henry* v. *City of Los Angeles,* 201 Cal.App.2d 299, 306 [20

Cal.Rptr. 440] ; *People* v. *Watkins,* 175 Cal.App.2d 182, 185 [345 P.2d 960] ; *Mercantile Accept. Corp.* v. *Liles Bros. Motor Co., supra,* 167 Cal.App.2d 779, 785) ; and the burden is upon the party alleging estoppel to prove it. (*General Motors Accept. Corp.* v. *Gandy,* 200 Cal. 284, 295 [253 P. 137] ; *In re Mercantile Guar. Co.,* 263 Cal.App.2d 346, 356 [69 Cal.Rptr. 361] ; *Greiner* v. *Kirkpatrick,* 109 Cal.App.2d 798, 801 [241 P.2d 564].)

In the present case the trial court found that there was no estoppel. Therefore, the question is whether or not this finding is supported. The evidence on the question of estoppel is not in conflict. All of the elements of estoppel are established by the evidence and the uncontradicted facts are sufficient to establish the careless and culpable negligence which is equivalent to an intent to deceive. The evidence compels us to state that a conclusion opposite to that made by the trial court is the only conclusion that can be reasonably drawn from the facts. Accordingly, we hold that as a matter of law Argonaut was culpably negligent and that an estoppel has been proven. Mr. Burke, the president of Argonaut, testified that he knew that Guardian was in the business of buying and selling notes, and that he "assumed" Guardian was selling them to the public. This testimony apparently constitutes the basis for the trial court's finding "That Argonaut assumed that Guardian planned to sell the 301 notes and deeds of trust to members of the public." By delivering the deeds of trust and the assignments into the possession of Guardian, and by permitting the recordation of the assignments, which stated that both the deeds of trust and the notes had been assigned to Guardian, Argonaut clothed Guardian with the indicia of ownership of both the notes and deeds of trust. Accordingly, since Argonaut was apprized of the fact that Guardian was in the business of selling notes and deeds of trust to the public, its careless and culpable conduct in clothing Guardian with the indicia of ownership of the subject 301 notes was equivalent to an intent to deceive, and evinced an intention that such conduct would be acted upon by the purchasers of said notes and deeds of trust. Here, plaintiffs were ignorant of the existence of the pledge agreement, and, although they relied on representations made by Guardian, they also relied to their detriment upon a state of affairs with respect to the apparent ownership of the subject notes and deeds of trust that resulted from Argonaut's conduct. Although the court found only that plaintiffs relied on Guardian's

representation that they would receive interest at the rate of 10 percent per annum on their investment with Guardian, the evidence is uncontradicted that what they were purchasing for investment were notes secured by deeds of trust. The fact that plaintiffs were purchasing secured notes is clear from the undisputed evidence that Guardian represented to plaintiffs that it was selling them notes secured by deeds of trust; that upon the execution of the service agreement Guardian represented to plaintiffs that it had the notes and deeds of trust purchased by them in its possession and was retaining them for collection as agent of plaintiffs; that, in some instances, Guardian executed assignments of the notes and deeds of trust to certain of plaintiffs, and, in some instances, recorded these assignments and delivered them to certain of plaintiffs. With respect to the plaintiffs in whose favor Guardian did not execute assignments, we note that the record is undisputed that these plaintiffs were obviously entitled to assignments since in each instance the Receiver in Bankruptcy later proceeded to execute and record the assignments. In this regard we note that the determination of the crucial issue in this case does not turn upon whether Guardian actually assigned the notes and deeds of trust to plaintiffs but rather turns upon the fact that plaintiffs had the right to believe, by reason of the constructive notice imparted by the recorded assignments from Elliott to Guardian, that Guardian had the unencumbered ownership of the notes and deeds of trust which they were purchasing.

To innocent third parties, therefore, the transaction between Guardian and Elliott had the appearance of a completed transaction without the intervention of any rights in favor of Argonaut. Since this appearance was created through the fault and negligence of Argonaut, the latter's misplaced confidence in Guardian must yield to the application of the maxim of jurisprudence provided for in Civil Code section 3543, as follows: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (For application of these principles of estoppel in similar cases see: *Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp., supra,* 54 Cal.2d 773, 779; *McKee* v. *Peterson, supra,* 214 Cal.App.2d 515, 524-525; *Mercantile Accept. Corp.* v. *Liles Bros. Motor Co., supra,* 167 Cal.App.2d 779, 784-785; *Meadows* v. *Hampton Live Stock Com. Co., supra,* 55 Cal. App.2d 634, 636-637.)

In *Security Mortg. Co.* v. *Delfs,* 47 Cal.App. 599 [191 P.

53], there was a situation somewhat similar to that in this case. There a note and mortgage were assigned by the payee to a bank on a separate paper as security for the payment of the payee's independent debt. The bank voluntarily delivered the note and mortgage to the payee without any notation thereon showing its claim or the recordation of the assignment of the note and mortgage to it by the payee. The payee assigned the note and mortgage to another who took the same in good faith and for value, and without any notice of any prior claim. The appellate court, invoking Civil Code section 3543, held that, although the bank was an innocent party, it was estopped from claiming ownership as against the subsequent assignee because the bank's negligent conduct made possible both the fraud and the injury. (Pp. 602-603, 604.) The court further noted, quoting from *Smitton* v. *McCullough*, 182 Cal. 530, 538 [189 P. 686], that " 'The policy of the law is against upholding secret liens and charges to the injury of subsequent purchasers and encumbrancers.' " (P. 603.)

In view of the foregoing, we conclude that plaintiffs were the owners of the respective notes sold to them by Guardian free and clear of any claim by Argonaut. Accordingly, each of the plaintiffs is entitled to the proceeds of the particular note purchased by him together with the interest which has accrued thereon. This conclusion should be dispositive of the present case. However, since plaintiffs also contend that the pledge agreement is invalid and unenforceable on several grounds, some of which go to invalidity predicated upon alleged violations of law for which plaintiffs claim they are entitled to damages, we proceed to consider these contentions.

### Validity of Pledge Agreement

Our conclusion that plaintiffs' right in the subject notes was superior to that of Argonaut does not, however, require that we hold that the pledge agreement was totally without validity. As between Guardian and Argonaut, the pledge agreement was a valid agreement which created a valid lien on said notes in favor of Argonaut as against Guardian, although junior and subordinate to the rights of plaintiffs. Plaintiffs do make some observations touching upon the validity of the pledge agreement but we find these to be without merit. First they suggest that there was no negotiation and delivery of the promissory notes to Guardian and that consequently Guardian had no property interest to transfer by way of pledge; second, they seem to suggest that even

if there was a negotiation and delivery of the notes to Guardian, there was no effective delivery from Guardian to Argonaut as the pledgee; and, finally, plaintiffs suggest invalidity on the basis that the pledge agreement was unsigned.

Adverting to the first argument, we call attention to our previous discussion concerning the delivery of the notes from Elliott to Guardian, and the finding of the trial court that Elliott assigned the notes to Guardian. This finding, which plaintiffs do not contest, implies a delivery of property to Guardian. With respect to delivery to Argonaut as pledgee, it is true that under the terms of section 2988 of the Civil Code, as it read at the time of the transaction in question, no pledge is valid until the property pledged is delivered to the pledgee. However, under the same provision delivery in pledge can also be made to a pledge-holder. Here the court found that the notes were delivered to Surety as pledge-holder. With regard to the pledge agreement which the court found to be unsigned, we note that an agreement is not invalid because it is couched in an unsigned writing. A pledge agreement need not be express or in writing, but may be implied from the facts and circumstances of the case. (*Lawrence* v. *I. N. Parlier Estate Co.*, 15 Cal.2d 220, 229 [100 P.2d 765] ; see Witkin, Summary of Cal. Law (1960) p. 648.) Here the court found pursuant to substantial evidence that the pledge agreement claimed by Argonaut existed and that it was a valid agreement.

### Usury

Plaintiffs contend that the pledge is unenforceable by Argonaut because of the usurious nature of the agreement. This contention appears to us to be moot in view of our holding that Argonaut's lien in the said notes is junior and subordinate to the rights of plaintiffs. However, since plaintiffs claim that they are entitled to damages because of the claimed usury we shall discuss this issue.

The evidence showed and the court specifically found that under the agreement Argonaut was to receive 7.3 percent per annum and 2 percent of the principal amount in addition to interest. At the trial testimony was elicited from Mr. Burke, of Argonaut, to the effect that if Guardian processed and paid off the notes in the 60 days contemplated by the agreement, the interest and the additional fee would result in a payment for the use of the money that would be in excess of 19 percent on an annual basis. He also testified, however, that it was not

contemplated that the financing agreement would actually be completed in 60 days. On the basis of this testimony, plaintiffs maintain that the agreement calls for charges against a borrower in excess of the 10 percent per annum allowed by article XX, section 22 of the California Constitution. It should be noted here that the court did not make the special finding of fact on the usurious nature of the agreement as requested by plaintiffs.

Whether a transaction is usurious is generally a question of fact (*Janisse* v. *Winston Inv. Co.*, 154 Cal.App.2d 580, 582 [317 P.2d 48, 67 A.L.R.2d 225]; *Wooton* v. *Coerber*, 213 Cal.App.2d 142, 145 [28 Cal.Rptr. 635]); it is proper to decide the issue as a matter of law where the court can easily determine whether a certain interest charge does or does not exceed the lawful rate. (*White* v. *Sweeney*, 138 Cal.App.2d 199, 201-202 [291 P.2d 77].) In the instant case there is no claim that usurious interest was paid but only that the pledge agreement relied upon by Argonaut *calls* for payment of interest to Argonaut in excess of 19 percent on an annual basis. A transaction is not usurious, so as to require the lender to refund usurious interest received by him until there has been an actual payment of usurious interest. (*Penziner* v. *West American Finance Co.*, 10 Cal.2d 160, 179 [74 P.2d 252]; *Weiss* v. *Brandt*, 137 Cal.App.2d 710, 719 [290 P.2d 626]; *Golden State Lanes* v. *Fox*, 232 Cal.App.2d 135, 139 [42 Cal.Rptr. 568]; see *White* v. *Seitzman*, 230 Cal. App.2d 756, 764-765 [41 Cal.Rptr. 359].) Here the uncontradicted testimony was that Argonaut received only $3,380 under the arrangement for a 2 percent fee and that no additional interest was received. In fact, Argonaut sought to recover the interest due on the subject notes in the instant action and left the determination to the trial court.[6]

Moreover, the defense of usury is personal to the borrower and one who is not a party to the usurious contract may not attack it. (*Sosin* v. *Richardson*, 210 Cal.App.2d 258, 266 [26 Cal.Rptr. 610]; *Zimmerman* v. *Boyd*, 97 Cal.App. 406,

---

[6]The trial court found that the interest due was the sum of $20,480.10. This amount was clearly within the legal rate. The judgment, moreover, does not allow for the payment of any proceeds under the 2 percent provision. Under the judgment the interest due Argonaut is reduced by the amount of $3,380 previously collected under this provision. In view of our determination that the interest of Argonaut in the subject notes is junior to that of plaintiffs, a reversal of the judgment will be required. Whether Argonaut is entitled to any interest will depend upon the computations to be made by the court upon remand according to the directions we hereinafter make.

408 [275 P. 509].) Here, plaintiffs were not parties to the pledge agreement; nor were they injured by it since it did not operate in a usurious fashion.

## Corporate Securities Law

In their complaint plaintiffs alleged that Argonaut, Surety, Guardian and D & G agreed to market secured promissory notes to the general public without a permit and in violation of law. Their assertion that Argonaut's lien on the subject proceeds should be barred under the "clean hands" doctrine because of a violation of the Corporate Securities Law loses its thrust in view of our holding that Argonaut's lien is junior and subordinate to the rights of plaintiffs. However, since plaintiffs assert that they are entitled to damages against Argonaut because of the alleged violation, we approach this issue by noting that the trial court found against plaintiffs on this question.

Although the trial court found that Guardian did not have a permit to sell securities it also found: "That Argonaut did not directly or indirectly or in any manner participate or assist Guardian to solicit or obtain customers for Guardian." This finding rules out, by implication, plaintiffs' assertion that Argonaut was involved with Guardian in a dishonest scheme to issue securities to the public without a permit. There is no contention, moreover, that the evidence does not sustain the specific finding made by the court. Since Argonaut was not selling securities to the public, the Corporate Securities Act would not apply in the absence of a showing of participation by Argonaut with Guardian in the marketing of securities. Accordingly, we conclude that plaintiffs' argument is without merit.

## Damages

Plaintiffs contend that Argonaut and Surety are liable in damages for conversion of the promissory notes; that they are liable for amounts below the legal interest rate received on the proceeds of the notes; and that exemplary damages should be awarded against Argonaut and Surety because they engaged in a course of tortious conduct requiring such an award.

As to the contentions of plaintiffs that the notes were converted and that Argonaut and Surety should be liable for exemplary damages, plaintiffs cite no authority or legal argument in support thereof. Accordingly, we are not obliged to consider these contentions. (*People* ex rel. *Dept. of Public Works* v. *Garden Grove Farms*, 231 Cal.App.2d 666, 674 [42

Cal.Rptr. 118]; *Coates Capitol Corp.* v. *Superior Court, supra,* 251 Cal.App.2d 125, 130.) We note, however, that the trial court's finding that the pledge agreement was a valid agreement and our determination that plaintiffs' superior rights arise by way of estoppel negate any basis for a finding that the notes were converted. Moreover, with respect to the claim of exemplary damages, it appears that this claim is based on the alleged usurious nature of the pledge agreement and on the alleged scheme in violation of the Corporate Securities Act, both of which contentions we have hereinabove found to be without merit.

▮ Plaintiffs' contention that they are entitled to additional interest in the sum of $14,340.62 is based on a claim that they are entitled to such interest as ''the excess of the amount of legal interest due to plaintiffs over the amount of interest actually held in the savings account as of January 17, 1966.'' This contention has reference to interest on the funds representing the proceeds of the notes which were placed in savings accounts by Surety pending the outcome of the instant litigation and the settlement of the conflicting claims to the proceeds. Since plaintiffs will be entitled to the interest which has accrued in said savings accounts to the extent of the portion of said proceeds to which each is entitled, and in view of the fact that they stipulated that the proceeds of the promissory notes should be deposited in the savings accounts, we perceive no merit to plaintiffs' claim.

### Waiver

▮ In April of 1962 Argonaut entered into a compromise agreement with Guardian in regard to the proceeds of 92 of the original 301 notes issued by D & G. Under this agreement Argonaut received 60 percent of the face value of the notes plus a portion of the interest paid by D & G, and Guardian received the remaining 40 percent and a proportionate amount of interest. No other individuals claimed any interest in these notes. Plaintiffs now argue that Argonaut waived an amount of its lien on the 63 notes in litigation equal to the amount allowed to Guardian under the compromise. In support of this contention plaintiffs rely on a general rule, stated in 110 A.L.R. 65, 67, ''that where a mortgagor or other lienee has alienated a portion of the mortgaged premises, and the mortgagee or other lienor, having notice of such alienation, releases the mortgage or other lien as to the portion retained by the mortgagor or lienee, such mortgagee or

lienor must deduct from the debt, before enforcing his lien against the property alienated, the value of the property released."

This rule is not applicable to the instant case for several reasons. All of the cases supporting the rule cited in the annotation involve security interests in land, as does the one cited California case, *Blood* v. *Munn*, 155 Cal. 228 [100 P. 694]. No case has been cited, nor have any come to our attention, involving the pledge of promissory notes as in the instant case. Moreover, the annotation cited by plaintiffs suggests that the general rule does not apply where the mortgagor and the mortgagee agree to the release. (110 A.L.R. 72, citing *Vanorden* v. *Johnson*, 14 N.J. Eq. 376 [82 Am.Dec. 254]; *Davis* v. *Piggott*, 57 N.J.Eq. 619 [42 A. 768].) In the instant case the compromise agreement between Guardian and Argonaut specifically provided that the amount of Argonaut's claim was reduced by the amount that Argonaut received from the 92 notes, thus bringing into play the exception to the rule cited. In any event, the rationale behind the general rule is not present in the case at bench. The purpose of the rule is to protect the property alienated against the enforcement of the lien. Accordingly, since the alienation to plaintiffs of the notes which are the subject of this action created, as we have already indicated, a superior right in the plaintiffs in these notes over the claim of Argonaut, the application of the rule is of no moment and the effect of the compromise agreement is relegated solely to an adjustment of the rights as between Guardian and Argonaut.

## The Motion to Reopen

After submission of the case for decision and after the court had entered its memorandum decision, plaintiffs moved for an order reopening the case for the taking of further evidence, supporting the motion with a declaration. The court denied the motion and plaintiffs contend that the court was in error. Specifically, plaintiffs claim that the evidence in the declarations shows that the principal officers of Argonaut engaged in financial or mortgage transactions where they concealed their personal interests to the detriment of the public interest.

Plaintiffs rely on the rule that where fraud is charged, evidence of other frauds or fraudulent representations of like character, committed by the same parties at or near the same time is admissible to prove intent. (*Wright* v. *Rogers*, 172

Cal.App.2d 349, 363 [342 P.2d 447]; *Atkins Corp.* v. *Tourny,* 6 Cal.2d 206, 215 [57 P.2d 480].)

Here the declarations of plaintiffs outline loans of Argonaut Savings and Loan Association which were said to have been obtained by fraud. The declarations point out that the principals of the savings and loan association were the same as the principals of defendant Argonaut in the present case. The declarations also delve into the complexities of various loan transactions among individual officers of Argonaut and the San Francisco National Bank. According to the declarations the activities in question all occurred from 1963 through 1965; at least three years later than the transactions which form the basis of the instant case.

The ruling on a motion to reopen is largely a matter of judicial discretion which will not be disturbed on appeal in the absence of a clear abuse thereof. (*Kaplan* v. *Hacker,* 113 Cal.App.2d 571, 573 [248 P.2d 464].) Here we find no abuse of that discretion when we consider that the declarations of plaintiffs presented: (1) different parties than those involved in the case before us; (2) a different type of transaction than the secured deed and note dealings of the present case; (3) a measurable time lapse between the alleged frauds.

## Conclusion

As already indicated, Argonaut is estopped as against plaintiffs from asserting its lien under the pledge agreement. Therefore, that portion of the judgment must be reversed which orders, adjudges and decrees that Argonaut is entitled to recover the sum of $142,008.10 of the proceeds on deposit in the savings and loan association together with interest on said sum as credited by the savings and loan association from January 17, 1966 to the date of payment to Argonaut, and that plaintiffs are entitled to the sum of $37,717.62 of such proceeds, and the interest which has accrued thereon, to be ratably apportioned among plaintiffs.

Estoppel was not urged against Surety, and the findings of fact made by the trial court with respect to Surety upon which the judgment in its favor is predicated are supported by substantial evidence. Accordingly, the portion of the judgment adjudging that plaintiffs take nothing by their complaint against Surety and that Surety take nothing by its cross-complaint against plaintiffs and Argonaut must be affirmed.

In view of the foregoing that portion of the judgment

which orders that Surety recover its costs of suit as a prevailing defendant as against plaintiffs, and that no costs are allowed to plaintiffs or Argonaut appears to be proper and, therefore, is affirmed.

There is nothing in the record which impels us to order a new trial because of the partial reversal of this case. The case was fully tried, there is no necessity to take further evidence, and the findings are adequate on all the disputed issues involved. As the findings of fact on the disputed issues and the conclusions to be drawn from the undisputed facts require that a judgment be entered ordering and decreeing a reapportionment of the subject proceeds as between plaintiffs and Argonaut, the cause is remanded to the trial court to amend its conclusions of law in accordance with the views herein expressed and to make a redetermination of the interests of plaintiffs and Argonaut in said proceeds and the accrued interest thereon as set out below. First, the sum of $160,449.01 paid by D & G in payment of the principal and interest on the subject 63 notes shall be applied to satisfy and discharge the respective notes assigned by Guardian to each plaintiff according to their tenor and to the extent of the interest of each of the plaintiffs in the respective notes. Next, the interest which has been credited to said proceeds by the various savings and loan associations, in which said proceeds have been deposited, from January 17, 1966 to the date of payment to plaintiffs is to be ratably apportioned among the plaintiffs in the percentage that the individual claim of each plaintiff bears to the total proceeds to which the plaintiffs are entitled. Upon the making of such allocations the balance of the said sum of $160,449.01 and the accrued interest thereon, if any, is to be paid to Argonaut.

The appeal from the order denying plaintiffs' request for the special finding of fact is dismissed. That part of the judgment determining the rights and interests of plaintiffs and Argonaut in the proceeds of the subject notes, and the interest which has accrued thereon, and that part of the order denying the motion to vacate judgment having to do with said portion of the judgment are reversed, with directions to the trial court to amend its conclusions of law and to enter judgment in accordance with the views herein expressed. The remaining parts of the judgment and the order denying the motion to vacate these portions of the judgment are affirmed. Surety shall recover its costs on appeal against plaintiffs. Plaintiffs and Argonaut shall bear their own costs on appeal. . . . . .

Sims, J., and Salsman, J.,* concurred.

A petition for a rehearing was denied April 8, 1969, and the opinion was modified to read as printed above. The petition of respondent Fisher & Burke, Inc., for a hearing by the Supreme Court was denied May 8, 1969.

*Assigned by the Chairman of the Judicial Council.